# William B. Smith et al.
## v.
# Diantha J. Hays.

*Druggists—Mistake—Negligence—Evidence—Instructions — Examination of Witnesses—Discretion—Damages—Question for Jury.*

1. Where a deadly poison is negligently sold and delivered, by mistake, in place of a harmless medicine called for at a drug store, and an injury to the purchaser is thereby occasioned, the druggist will be liable for the injury. It is wholly immaterial whether the negligence and mistake is that of a servant who is not a registered pharmacist, or of the druggist, or of both.

2. Trial courts are invested with a large discretionary power touching the examination of witnesses, with which appellate courts will not interfere unless it clearly appears to have been abused.

3. In an action against druggists to recover damages caused by a mistake in selling the plaintiff a deadly poison, it is *held:* That the evidence fully supports the verdict for the plaintiff; that the limitation of the examination of a certain witness was within the discretion of the trial court; that certain questions were properly ruled out as leading, especially as they were immaterial; that there were no errors in giving and refusing instructions of which

the appellants can complain; that the plaintiff was only required to show that the injuries complained of resulted from the mistake, by a preponderance of evidence; that the expert evidence does not show the injuries to be merely temporary; and that the question of the amount of damages to be assessed, was for the jury.

[Opinion filed June 9, 1887.]

APPEAL from the Circuit Court of Warren County; the Hon. T. M. SHAW, Judge, presiding.

Messrs. KIRKPATRICK & ALEXANDER and MATTHEWS & PEA-COCK, for appellants.

Messrs. PORTER & MACDILL, for appellee.

BAKER, P. J. Diantha J. Hays sued Smith & Dunbar, druggists, in an action on the case, and recovered verdict and judgment for $800 damages. The gist of the first and second counts of the declaration is the negligent sale to her of extract of belladonna, a dangerous and deadly poison, as extract of dandelion, a mild and harmless medicine ; whereby, she, having swallowed a portion of said poison, was greatly injured, so that her life was despaired of, and has been permanently weakened in body and impaired in health and disabled from attending to her usual business and work.

The second of these counts charges the sale was made by one McLain, a servant in the employment of the firm at their drug store. The substance of the third count of the declaration is that the firm had in their employment one McLain, who was not either a registered pharmacist or registered assistant pharmacist, and permitted him to vend drugs, medicines and poisons at their place of business without being under the supervision of a registered pharmacist; and that said McLain, under the circumstances above stated, sold and delivered to Hays the extract of belladonna, a deadly poison, instead of extract of dandelion, the harmless medicine that was asked for. The count also charges such sale was made without affixing to the box containing the poison a label bearing the name

of the article or the word poison. The residue of the count is substantially like the concluding portions of the first and second counts. This third count would probably be bad, upon special demurrer, for duplicity, as showing two separate and distinct causes of action; but appellants do not seek to, and could not now, take advantage of this objection; and reference is only made to the structure of this third count, in view of the criticisms made upon the rulings of the trial court with reference to some of the instructions asked by appellants.

Various objections are urged to the proceedings of the court, and to the verdict and judgment, and these will briefly be considered.

The question asked Dr. Linn and to which an objection was sustained was a competent and proper question ; it was ruled out, not for immateriality as suggested, but for the reason there had already been lengthy examination in chief, cross-examination, re-direct examination and re-cross examination of the witness, and the ground fully gone over. A trial court must necessarily be invested with a large discretionary power in the matter of the examination of witnesses. The prompt transaction of the business before the courts frequently requires that a limit should be placed upon the examination of a witness. In matters of this sort there will be no interference by appellate courts, unless it clearly appears the discretionary power has been abused ; such was not the case here, and there was no error in the action of the court.

Objections were sustained to the several questions asked Dunbar, one of the appellants, touching the authority given McLain to vend drugs, upon the express ground such questions were leading and suggestive. The court informed counsel they might prove the facts desired and might show the general character of the services McLain was engaged in and what his authority was; but they declined and refused to conform to the views and suggestions of the court.

There was no error in this ruling of the court; one should not be permitted to suggest and put into the mouth of his own witness, and especially when that witness is his client and a party to the suit, the very words of the answer desired. Be-

sides this, the objection to these questions may be placed upon higher ground.   Dunbar had already testified he was present when the sale was made, saw McLain behind the prescription case and was told by him he was putting up extract of dandelion for appellee, and thereupon looked at the jar and told McLain it was all right.   This evidence shows special authority given to McLain, the agent and servant, to sell extract of dandelion to appellee, and in view of such fact it was wholly immaterial what the authority of McLain with reference to the vending of drugs had theretofore been.

It is simply to say McLain was the special agent of appellants to put up and sell the dandelion, but not their agent in making a mistake in so doing.

The exceptions taken to the four instructions given for appellee are not well founded.   If it be admitted that it is entirely lawful for druggists who are registered pharmacists to employ servants to sell paints, oils, notions and all goods other than drugs, medicines or poisons, and authorize and permit such servants, under their supervision, to vend drugs, yet there can be no doubt but that if in so vending drugs a deadly poison is negligently sold and delivered, by mistake, in place of a harmless medicine called for, and an injury to the purchaser thereby occasioned, the druggists will be liable for the injury, and that it is wholly immaterial whether the negligence and mistake is that of the servant, or of the druggist, or of both combined.

Among other things the court instructed the jury " that it is the duty of druggists to know the properties of the medicines they sell, and to employ such persons as are capable of discriminating when dealing out medicines when called upon." While the duty is rather broadly stated in this charge, yet we are unable to see it could have worked an injury to appellants. An instruction in almost or quite the identical words was held in Brown v. Marshall, 47 Mich. 576, to correctly state the duty of druggists; and in Fleet & Semple v. Hollenkemp, 13 B. Mon. 219, it was held that it is the duty of a druggist to know the properties of his drugs, and to be able to distinguish them from each other.   The other criticisms upon these instructions are too technical and unimportant to require notice.

The 4th, 9th, 10th, 11th, 12th and 13th instructions asked by appellants had reference to the issues of negligence and the question of the legal liability of appellants. The first of these was modified by the court, and the others refused. There would have been no error in refusing them all as they were all vicious, two of them for the reason that they excluded from the consideration of the jury one or both of the two causes of action alleged in the third count of the declaration, and tending to prove which there was evidence before the jury.

The modifications of the 4th instruction did not improve it, and in the form in which it was given it did not accurately state the law, and under ordinary circumstances both parties to the suit might well have complained of it. It can, however, be safely said that neither the incorrectness of this instruction as submitted to the jury, nor the failure to give the 9th, 10th, 11th, 12th and 13th, even if we could assume they properly stated the law, worked an injury to appellants.

Upon a full and careful examination of the evidence we are of the opinion that it so clearly and overwhelmingly established negligence and an undoubted cause of action against appellants, under either the first or the second counts of the declaration, that a verdict for them upon either of said issues, could not and would not be allowed to stand.

The 4th instruction asked had reference to a supposed compromise and settlement of the cause of action, but there was no evidence upon which to base it, and the court very properly declined to give it.

The 5th, 6th, 7th, 8th, 15th and 16th instructions asked, were upon the subject of the damages to be assessed, and the four first mentioned were modified, and the two latter refused. The 5th and 6th in the forms in which they were tendered, were calculated to mislead the jury; and the modifications made by the court were not improper. The 7th and 8th might well have been given as asked, but the changes made by the court were, under the circumstances of the case on trial, unimportant and could do no harm. The 15th and 16th, if given, would have cast upon appellee the burden of proving beyond

Smith v. Hays.

every possible doubt the fact that the weakness, disability and disorder from which she was suffering down to the time of the trial, was caused by the dose of belladonna she had taken, before she could recover damages therefor. The law only imposed upon her the *onus* of establishing that issue by a preponderance of the evidence; and therefore said instructions were properly refused.

The weight of the medical expert testimony in the record would seem to be to the effect that the weakness, nervous depression and other ills from which appellee suffered down to the time of the trial were not the results of the belladonna taken by her.

The opinions expressed by these witnesses were based almost wholly upon knowledge obtained from the books, and none of them had enjoyed the benefits of anything approaching an extensive personal and practical experience with reference to the after effects of an overdose of poison. This character of the testimony is not very satisfactory. Some of these physicians swear that the derangement of the nervous system does not necessarily cease when the poison is eliminated; that the books say that the patients generally fully recover; that they think they might say that poisonous doses of belladonna might be endured and recovered from without any serious permanent injury to the constitution, but that they won't say it would be so in every case; that the paralyzing effect of this poison to the system might affect it so injuriously that a disease would be brought on that continues after the causes that produced it are all gone; and they make other statements to like effect. In view of these statements, and of the considerations suggested, and of the fact that appellee was greatly prostrated by the shock and made dangerously sick, and has been weak, nervous and disabled ever since that time, we are not prepared to say the jury was not authorized to find the injuries were permanent. Besides this, the very severe sickness and suffering that followed upon the taking of this deadly poison might be sufficient to sustain a verdict for $800. In the leading case of Thomas v. Winchester, 2 Selden, 397, where, as in this case, extract of belladonna was sold as extract

of dandelion, and the woman recovered from the injury and the damages were expressly confined to her personal injury and suffering, the judgment was for a like sum of $800. In cases of this sort the amount of the damages to be assessed is peculiarly for the consideration of the jury. We are unable to say the damages are so excessive as to require a reversal.

We find no error that requires a reversal, and justice has been done by the judgment.

The judgment is affirmed.

*Affirmed.*