**SPENCER et al. v. HOLT.**

No. 10293—Opinion Filed July 26, 1921.

(Syllabus.)

1. **Negligence—Negligence Per Se—Violation of Statute or Ordinance.**

A violation of a statute or ordinance specifically imposed under the police power of the state, is negligence per se, or as a matter of law, if the other elements of actionable negligence exist.

2. **Same—Liability Civil and Criminal—Explosives.**

There is an implied duty on the part of one who sells explosives to give notice of their dangerous character, and, as a general rule, it may be said that negligence may consist in the neglect of some duty imposed by statute as well as in the careless or negligent performance of some obligation imposed by law or contract. Liability for damages because of the violation of a statute or ordinance imposing some duty on a person, is not affected by the fact that it is made a misdemeanor, and that fact will not prevent an action for damages.

3. **Appeal and Error—Review—Questions of Fact—Verdict.**

When controverted questions of fact are submitted to a jury, and the evidence adduced is conflicting and contradictory, but there is competent evidence reasonably tending to support every material allegation necessary to uphold the verdict and the trial court approves the verdict and renders judgment in accordance therewith, and a new trial is refused, this court will not disturb the verdict of the jury and the judgment of the court on the weight of such conflicting evidence.

4. **Trial—Instructions—Sufficiency.**

Where the instructions given by the court fairly and reasonably present for the consideration of the jury the issues joined by the pleadings and presented by the evidence, they are sufficient.

Error from District Court, Payne County; John P. Hickam, Judge.

Action by Delbert Holt against Thad Spencer and others for damages for personal injuries. Judgment for plaintiff, and defendants bring error. Affirmed.

Higgins & Berton, for plaintiffs in error.

McCollum & McCollum, for defendant in error.

JOHNSON, J. On the 22nd day of November, 1915, Delbert Holt, as plaintiff, commenced an action against Thad Spencer, Herbert Spencer, Seldon J. Spencer, Lillian Wise, and Denton Spencer, as administrator of the estate of Wilbur Spencer, deceased, and the Peery Oil & Gas Company, a corporation, as defendants, to recover the sum of $35,918.90 damages for personal injuries, which injuries the plaintiff alleged he received by reason of the wrongful acts of the defendants in selling the plaintiff certain highly explosive oil or gasoline in lieu of coal oil as called for by one of the associates of the plaintiff, who, in said act of purchase, was acting for and on behalf of plaintiff and his associates.

The cause was tried to the court and jury and resulted in a verdict in favor of the plaintiff in the sum of $3,000, upon which judgment was rendered, and to reverse which judgment this proceeding in error has been regularly commenced. For convenience the parties will hereinafter be referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

At the close of the trial the court sustained a demurrer of the defendant Peery Oil & Gas Company to the evidence of the plaintiff, and thereby said defendant passed out of the case and is not a party to this appeal.

The other defendants, appealing, make numerous specifications of error, 14 in all. Concerning these specifications of error and

the issues involved, counsel for the defendants say in their brief:

"The theory upon which the defendant in error tried his case in the court below is founded upon two grounds, or separate bases of liability. First: He sued upon what we shall term the statutory liability of a dealer in oil for failing to have oil inspected which was sold by him, or rather selling of which had not been inspected according to the inspection laws of the state of Oklahoma, and that he sold oil which was an outlaw product and which had been rejected by the oil inspector department of the state of Oklahoma. Second: That the plaintiff in error, as a retail merchant, sold to the defendant in error, or his companions, oil which was below the standard required by the oil inspector of the state, and after taking said oil to their camp and trying the same, they noticed some suspicious actions of the oil and returned it to the merchant and complained to him that it was not kerosene or coal oil suitable for illuminating purposes, and requested him to take said oil back, which he refused to do, and expressly warranted that the oil which he had sold to them was a high grade of petroleum or kerosene oil.

"In other words, the first theory is that the plaintiffs in error violated the statutes by selling uninspected oil, and the second theory is that they are liable as vendors of a dangerous instrumentality, and that notice of the dangerous character thereof had been brought home to them and that they refused or failed to take such steps or precautions as an ordinarily prudent and careful merchant would take under like circumstances.

"These are the two theories upon which the amended and substituted petition of the defendant in error are founded, and upon which the trial court in part instructed the jury and upon which the case was tried below. The said defendant in error also pleaded in his amended substituted petition that the sale of this oil to the plaintiff, or to his companions, was the conjoint and concurrent act of the wholesaler or distributor, F. T. Peery, doing business as the Peery Oil & Gas Company, and the defendants Spencer and Wise.

"The principal objections to the action of the trial court and its rulings on the trial may be grouped together under four distinct and separate grounds, viz., the overruling of the motion for new trial, the overruling of the demurrer to the evidence, and the giving of erroneous instructions not applicable to the issues as framed by the pleading and upon which proof was offered, and fourth, that the judgment of the court is contrary to the evidence and there is no evidence to support said judgment."

These propositions of the defendants will be considered together. The evidence shows that plaintiff and several boys had established a tent camp on the banks of the Cimarron river near Yale, Oklahoma, a short time prior to the explosion, and were living there and working there during the winter months of 1914-1915. That they had two tents, one cook tent, in which there was a cook stove, and one sleeping tent, in which there was a heating stove. The wood was scarce and they did not always build a fire in the sleeping tent by reason of the scarcity of wood and by reason of their being out to work early and back from work late, and being tired and going immediately to bed. That most of the boys lived at Blackburn, and would go and come from Blackburn to their camp; sometimes all were in camp, sometimes only a few. That they elected one Henson as a shopper for the whole crowd, and that supplies were purchased by him after lists were made up and money paid to him by the several members of this camp. That a few days prior to February 5, 1915, Henson and some of the other boys, not including the plaintiff, however, went to Spencer's store in Yale to buy a general bill of groceries and supplies; that, among other things, they ordered a can or two of coal oil; that the fluid smelled like gasoline; that upon the assembling of the order in the middle of the floor, Henson or some other one of the party remarked that they had ordered coal oil and the clerk said: "That is coal oil," and a member of the party said. "All right, but it smells like gasoline." That the boys had no other oil in the camp at that time. except perhaps a little in some of the lanterns; that the can or cans purchased were not labeled or tagged; that some of these refilled or finished filling their lanterns with this new purchase of oil, and that their lanterns sputtered and flashed and they became further doubtful as to the quality of the oil which had been delivered to them. That plaintiff did not know of the peculiar smell of the oil or the peculiar action of the lanterns. That the next day or the second day after, some of the party carried the oil back to the store and protested again that it was not coal oil; that the clerk in the store, assuring them it was coal oil, went with them into the back yard, and there on a cold winter day poured some of the oil on the ground and struck a match to the oil on the ground, and that the same caught fire and burned up readily.

The evidence further shows that upon being thus reassured the boys carried the oil back to camp; the plaintiff knowing nothing about the oil being carried back to the store: that on the evening of February 4, 1915, the plaintiff started to build a fire

in the heating stove in the sleeping tent; that, preparatory to doing so, he reached down in the bottom of the stove and raked the ashes back to the back part of the stove with his bare hand; that he placed some shavings and kindlings in the bottom of the stove near the front draft; that some of the boys suggested that they go to bed and not build any fire, and that suggestion was followed; that there had been no fire in this stove for three or four days; that very early the next morning he was called by the other boys to get up and build a fire; that he did get up and get one of the cans of oil recently purchased from said defendants and poured a small quantity from the can into a baking powder can, set the can back several feet, poured the contents of the baking powder can on the kindlings through the top of the stove, placed the lid back on the top of the stove, struck a match and placed same to the draft entrance and immediately an explosion occurred, something striking him violently on the hand; the air seemed to take fire, and fire and commotion generally resulted. That he was very seriously and permanently injured and incapacitated; that it was a cold morning with the wind blowing; that the can containing this fluid had stood in the enclosed sleeping tent all during the night before, and the experts for both sides testified that such an explosion could not have resulted from the use of any reasonable quantity of coal oil, but that it could have resulted from such a quantity of gasoline or naptha. That gasoline gives off vapors in any kind of atmosphere which, when mixed with oxygen, creates a high explosive.

Revised Laws 1910, sec. 4332, requires that all oil and liquids, the product of coal, petroleum, or other bituminous substance, should be inspected by an authorized inspector of this state before the same are offered to be sold or disposed of to merchants, consumers, or other persons within this state. Section 4334 prescribes the duties of the inspectors. Section 4356 requires that all manufacturers and wholesale and retail dealers of oil shall, at the time of selling and disposing of such oils, place a tag or brand upon the vessel designating the "flash test" and the "specific gravity" test and the quality of oil contained in said receptacle, and provides that any retailer violating the provisions of this section shall be guilty of a misdemeanor and on conviction shall be fined in any sum not exceeding $100. or by imprisonment in the county jail not exceeding six months. or by both such fine and imprisonment.

Section 4358 provides that all manufacturers and wholesale dealers shall be liable to retail dealers and all other persons for damages of every kind and nature, including fines, penalties, and civil damages, because of the inferior quality of the oil sold.

In 19 Cyc. 6, is to be found the following:

"There is an implied duty on the part of one who sells explosives to give notice of their dangerous character, which duty is sometimes expressly enjoined by statute. Where one sells oil in violation of the statute, his liability is not confined to the immediate vendee, but extends to subsequent purchases."

In 29 Cyc. 436, it is stated as follows:

"As a general rule it may be said that negligence may consist in the neglect of some duty imposed by statute as well as by the careless or negligent performance of some obligation imposed by law or contract. Liability for damages because of the violation of a statute or ordinance imposing some duty on a person is not affected by the fact that it is made a misdemeanor, and the fact that the statute imposes a penalty for its violation will not prevent an action for damages."

"In many decisions it is held that a violation of a statute or ordinance specifically imposed under the police power of the state is negligence per se, or as a matter of law, if the other elements of actionable negligence exist."

In Parker v. Barnard (Mass.) 46 Am. Rep. 454, it is said:

"As a general rule where an act is enjoined or forbidden under a statutory penalty, and the failure to do the act enjoined or the doing of the act forbidden has contributed to any injury, the party thus in default is liable therefor, to the party injured, notwithstanding he may also be subject to a penalty. 8 Am. Rep. 354."

See 72 N. W. loc. cit. 1063, where it is said:

"The purpose of the statute is plain. It was intended to guard human life and protect human bodies from being mangled. It is a police regulation founded upon sound public policy, and courts ought not to strain or restrict by construction, so as to impair its useful operation."

See Ives v. Welder (Iowa) 87 N. W. 408, wherein a child was injured by the explosion of gasoline purchased by her father, the gasoline not being tagged or labeled as such by the retailer. The facts are extremely similar to those in the case at bar, and we quote from the opinion as follows:

"The evidence is conflicting, whether the father ordered gasoline or kerosene. The defendant claims that he ordered gasoline. But, as we view the matter, it does not ma-

terially affect this case one way or the other. Section 2505 of the Code provides that no gasoline shall be sold, given away or delivered to any person in this state until the package, keg, barrel or vessel containing the same has been marked 'gasoline.' This statute is evidently for the protection of all persons in the state. * * * As to her, then, the failure to label the jug as required by law was negligence per se, because it was a violation of a statutory requirement that it be marked 'gasoline' before delivery to any person. 59 N. W. 5, 24 L. R. A. 657; 62 N. W. 761, 33 L. R. A. 496."

The last three cases, supra, are from the Supreme Court of Iowa.

We think it is quite obvious from the authorities, supra, and the summary of the evidence, that the defendants' propositions that the court erred in overruling the demurrer to the evidence, that the judgment of the court is contrary to the evidence, and that there is no evidence in support of such judgment, are without merit. That leaves for further consideration that the court erred in his instruction to the jury and in overruling the defendants' motion for a new trial.

We have carefully examined the instructions. No. 1 thereof contains a full and accurate statement of the issues involved in the case. No. 2 correctly charges the burden upon the plaintiff to prove by a preponderance of the evidence all material allegations in his petition before a recovery can be had in the action, adding, if the evidence is equally balanced or preponderates in favor of the defendants, the verdict of the jury should be for the defendants and against the plaintiff. No. 3 correctly states the elements that would constitute the plaintiff's damage in the event the jury should find a verdict in his favor. No. 4 admonishes that the jury is to be governed exclusively by the evidence and the instructions of the court as to the law. Nos. 5 and 6 charge the burden was upon the plaintiff to prove that the defendants sold the oil to the plaintiff or his associates, and that the identical oil sold was used by the plaintiff at the time of the explosion, and that the defendant nad received knowledge of the unsafe or dangerous character of the oil sold, and that after receiving such knowledge it failed to take such steps to ascertain the true character and grade of oil as an ordinarily prudent person would have taken under similar circumstances, and that if the defendant had taken the steps which an ordinarily prudent person would have taken such steps would have led to the discovery that such oil was unsafe and dangerous, charging that if the plaintiff failed to prove all the statements of fact set forth in these instructions, then the verdict should be for the defendants. No. 7 charges the statute requiring that all manufacturers and retail dealers of oil and gasoline shall, at the time of selling or disposing of such oil, place a tag or brand upon the vessel in which the same is contained designating the "flash test" and "specific gravity" test, and it was a correct statement of the law. No. 8 instructed the jury that in arriving at their verdict they would take into consideration all the facts and circumstances and evidence, etc. Nos. 9, 10, 11, and 12 contained substantially correct statements of the law as applied to the facts of the case constituting the primary negligence of the defendants and the contributory negligence of the plaintiff and submitted the cause to the jury in substantial accuracy and fairness to both parties. Under these circumstances the propositions of the defendant as to the erroneous instructions to the jury and overruling of defendants' motion for a new trial are without merit; it being the established law in this jurisdiction by many decisions of this court that in a law action where there is evidence reasonably tending to support the verdict of the jury or the judgment of the trial court, the judgment of the lower court will not be disturbed. Carden et al. v. Humble, 76 Okla. 165, 184 Pac. 104; Frazier Brick Co. v. Herber, 62 Okla. 96, 162 Pac. 205; Berryhill v. Thrailkill, 61 Okla. 235, 160 Pac. 874; Kapp v. Levyson, 58 Okla. 651, 160 Pac. 457; Eoff et al. v. Alexander, 62 Okla. 12, 161 Pac. 807; First Nat. Bank of Checotah v. Lewis, 61 Okla. 247, 161 Pac. 175, all of which are very recent cases by this court.

The judgment of the trial court is affirmed.

PITCHFORD, V. C. J., and KANE, MILLER, and KENNAMER, JJ., concur.