FORT WAYNE DRUG COMPANY *v.* FLEMION.

[No. 13,933. Filed April 14, 1931. Rehearing denied August 13, 1931.]

*Arthur W. Parry,* for appellant.

*Eggeman, Reed & Cleland* and *James P. Murphy,* for appellee.

. NEAL, P. J.—The appellee instituted this action to recover damages of appellant. Trial was before a jury, which returned a verdict in favor of appellee and the court rendered judgment on the verdict. The tenor of the second and third paragraphs of complaint, the first paragraph having been stricken out on motion, was that

appellee had received permanent and bodily injuries as a result of burns received from an explosion of benzol; that the benzol was negligently, carelessly and mistakingly supplied and furnished by appellant when crude oil was ordered and requested, and that appellant negligently failed to label the container containing the benzol, so that the contents thereof might be known, it being alleged that benzol was a highly explosive, dangerous and inflammable liquid.

Appellant assigns error in overruling its motion for a new trial. The several causes for a new trial, to wit: (1) That the verdict is not sustained by sufficient evidence; (2) that the verdict is contrary to law; (3) errors in the giving and refusal to give certain instructions; (4) errors in the admission of certain items of evidence—all of which are presented.

A resume of the evidence favorable to appellee: That appellee was, on June 23, 1928, the day of his injury, 37 years of age, a steam fitter by trade, earning approximately $50 per week in the employ of one Anthony Haberstock, who was engaged in the plumbing business in the city of Fort Wayne, Indiana; that the appellant, on the above-named date, was a corporation, with place of business in the named city and engaged in the sale of drugs, medicines, etc., including crude oil and benzol, both wholesale and retail; that, on the above-named day, the appellee, while in the employ of Anthony Haberstock, was engaged in cleaning a boiler in the basement of a building in the city of Fort Wayne; that the method used by appellee in his work was to take a wire brush, scrape off the soot on the inside of the boiler, then spray crude oil in the fire box and on all parts surrounding the same; that the appellee, on the morning of June 23, 1928, called at the home of his employer and requested that he be furnished and supplied with three gallons of crude oil; that the wife of An-

thony Haberstock, Haberstock being absent from the city, directed her son John Haberstock, to whom she gave some currency, and Christ Zimendorf, her brother, to purchase crude oil and deliver the same to appellee; that the son was 12 years of age; that Zimendorf, after receiving the message, went to the shop of Anthony Haberstock and obtained a five-gallon, square tin can, which had been previously used by Haberstock and his employees for the purpose of containing therein a supply of crude oil; that the can was loaded on a truck, and Zimendorf and John Haberstock, the son, proceeded to the place of business of appellant; that the son alighted from the truck, took the can, which was dirty and greasy on the outside, into the drug store, offered the can to an employee of appellant, whose duty it was to take orders, and requested that three gallons of crude oil be placed inside the can; that at the time John Haberstock offered to appellant's clerk the can, it contained therein about one gallon of crude oil, but there were no marks or labels thereon to indicate its contents; that the clerk who received the order made out a request for three gallons of benzol in writing and sent the can and request to the basement of appellant's place of business, where another clerk received the same, filled the can with three gallons of benzol and returned it to the clerk who received the order in the first instance, and John made payment for the purchase, received a receipt therefor and placed the same in his pocket; that the can so filled by appellant's employees did not bear any label or mark on the exterior thereof, or otherwise, indicating the contents therein, and the exterior appearance of the can had not been changed; that Zimendorf did not accompany the boy into appellant's place of business; that the can containing the benzol was placed in the truck and by them delivered to appellee at the building where he was engaged in cleaning the boiler as heretofore

stated; that, when the appellee received the can, there were no indications by mark or label thereon to indicate that the same contained benzol; that appellee prepared to spray the interior of the boiler, and, in order to do so, it was necessary that he place a cylindrical pump in the can, which he did through an opening in the top of same; that to the pump was attached a hose and the can was placed in the boiler pit in the front part thereof; that appellee might see where he was spraying the fluid into the interior of the boiler, he made use of an electrical extension cord, one end of which was connected with the electric current and the other end contained an incandescent bulb, and the bulb was thereupon lighted and was hanging over the fire door illuminating the boiler; that appellee proceeded to pump and spray the contents of the can which had been delivered to him by the brother and son, believing at the time the can contained crude oil, and when he had about half of the contents sprayed into the boiler, he noticed and detected by the sense of smell a peculiar odor; he then ceased pumping, took hold of the light cord and, when he was in the act of removing the light attached to the extension cord in order to make an investigation of the peculiar odor, an explosion occurred, enveloping the appellee in fire and flames, severely injuring him; that the extent of the explosion was such that the floor of the gymnasium was raised about six inches; that benzol is colorless, like water—transparent, while crude oil varies from yellow to almost a black in color; that benzol gives off a gas or fume, and if the gas emitted from benzol is confined in a boiler, and a spark is brought into contact with it, an explosion will follow; that the particular substance contained in the can when examined by a chemist disclosed that it contained 80 per cent benzol and 20 per cent crude oil; that the mixture with the proportions above set out, would ignite easily, and would flash at

room temperature of 70 degrees fahrenheit and 22 degrees centigrade and was inflammable, combustible and explosive; that the greater per cent of crude oil in the mixture the less likelihood of an explosion; that it is necessary for the gas emitted by the benzol to come into contact with a spark before an explosion will take place; that if, while withdrawing the cord which conducted electricity through the same to the incandescent light, a spark was emitted therefrom, it would be sufficient to ignite the gas coming from the substance sprayed into the boiler by the appellee; that there was no fire in the basement near or in the boiler or the fire-box thereof at the time of the explosion; that Tony Haberstock had, on many occasions in his business, sprayed crude oil into a boiler for the purpose of covering the castings; that, at such time or times, no fumes arose from the oil while being sprayed and no explosion had ever taken place although he had used a lighted candle for the purpose of illumination and it was his opinion that the crude oil would not explode when sprayed into the boiler in the manner as heretofore set forth, even though it would be brought into contact with a "light."

It is the law that a person engaged in the sale of those articles which are inherently dangerous to human life—a druggist who compounds a deadly poison or one who sells gas, gasoline, gunpowder or dynamite—must so conduct his business as "to avoid acts in their nature dangerous to the lives of others and one who is negligent in the performance of such duty is liable for damages to any person injured thereby." *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, 81 N. E. 600; *Weiser* v. *Holzman* (1903), 33 Wash. 87, 73 Pac. 797; *Peaslee-Gaulbert Co.* v. *McMath's Admr.* (1912), 148 Ky. 265, 146 S. W. 770, 39 L. R. A. (N.S.) 465, Ann. Cas. 1913E 392; *Davis* v. *Guarnieri* (1887), 45 Ohio St. 470, 15 N. E. 350, 4 Am. St. 548; *Tremblay*

v. *Kimball* (1910), 107 Me. 53, 77 Atl. 405, 29 L. R. A. (N. S.) 900, Ann. Cas. 1912C 1215.

It often has been held by appellate tribunals that a druggist who negligently supplies a deadly drug in lieu of a harmless one requested, either by prescription or otherwise, and who fails to label or mark the prescription or the article in order that those who might get hold of it would be warned of its fatal character and injury results from taking it, such negligence being the proximate cause of the injury, will be liable in damages. *Davis* v. *Guarnieri, supra; Peterson* v. *Westman* (1903), 103 Mo. App. 672, 77 S. W. 1015; *Fisher* v. *Golladay* (1890), 38 Mo. App. 531; *Brown* v. *Marshall* (1882), 47 Mich. 576, 11 N. W. 392, 41 Am. Rep. 728; *Tucker* v. *Graves* (1920), 17 Ala. App. 602, 88 So. 40.

In the case of *Weiser* v. *Holzman, supra,* which is approved by the Supreme Court of the United States in *Waters-Pierce Oil Co.* v. *Deselms* (1908), 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453, the Supreme Court of Washington said: "One who sells and delivers to another an article intrinsically dangerous to human life or health, such as a poison, an explosive, or the like, knowing it to be such, without notice to the purchaser that it is intrinsically dangerous, is responsible to any person who is, without fault on his part, injured thereby. The rule does not rest upon any principle of contract, or contractual relation existing between the person delivering the article and the person injured, for there is no contract or contractual relation between them. It rests on the principle that the original act of delivering the article is wrongful, and that every one is responsible for the natural consequences of his wrongful acts. The rule that liability exists in such cases is abundantly supported by authority."

With the foregoing principle of law in mind, we observe that the evidence disclosed that John Haberstock

requested crude oil, a liquid that was not volatile or highly explosive under ordinary conditions and that appellant, through its employees, gave him benzol, a liquid that was highly "inflammable, combustible and explosive," a chemical inherently dangerous to human life, and, further, that Haberstock handed to appellant's employee a container with some crude oil therein, dirty and greasy in its exterior appearance, and the same was returned to him with three gallons of benzol placed therein instead of crude oil as ordered, without label or mark thereon to warn him, or any other person, of the contents thereof. The jury was warranted in finding, as it did find, that appellant was guilty of negligence. *Davis* v. *Guarnieri, supra; Edelstein* v. *Cook* (1923), 108 Ohio St. 346, 140 N. E. 765, 31 A. L. R. 1333; *Moses* v. *Matthews* (1914), 95 ·Nebr. 672, 146 N. W. 920, Ann. Cas. 1915A 698; *Tombari* v. *Connors* (1912), 85 Conn. 231, 82 Atl. 640, 39 L. R. A. (N.S.) 274; *Smith* v. *Hays* (1887), 23 Ill. App. 244.

Many states by specific enactments of their legislatures have declared that it is the duty of vendors of highly explosive materials to designate by label, mark or otherwise the dangerousness of the articles sold. The common law, however, as applied to a vendor who sold dangerous merchandise, is well stated in *Wellington* v. *Downer Kerosene Oil Co.* (1870), 104 Mass. 64, as follows: "It is well settled that a man who delivers an article, which he knows to be dangerous or noxious, to another person, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other who is not himself in fault." *Weiser* v. *Holzman, supra; Peaslee-Gaulbert Co.* v. *McMath's Admr., supra; Fisher* v. *Galloday, supra; Spencer* v. *Bolt* (1921), 82 Okla. 280, 200 Pac. 187; *Bunyan* v. *American Glycerin Co.* (1923), 230 Ill.

App. 351; *Waters Pierce Oil Co.* v. *Davis* (1900), 24 Tex. Civ. App. 508, 60 S. W. 453.

Appellant contends that the evidence is insufficient, in that it fails to show that the negligence of appellant was the proximate cause of the injury; that an efficient intervening agency—a spark or flame—caused the explosion. Proximate cause has been the subject of much discussion in the reported cases of this state. In *Cincinnati, etc., R. Co.* v. *Armuth* (1913), 180 Ind. 673, 103 N. E. 738, our Supreme Court said: " 'Proximate cause is the act that immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury could not have occurred.' " It has often been said that a man's negligence must end somewhere, however, one is bound to anticipate and provide against what usually happens and what is likely to happen. Although a person who is negligent is liable only for those "injuries which a prudent man in the exercise of care could have reasonably foreseen or expected as the natural and probable consequence of his act or his omission of duty, it must not be supposed that the principle thus stated requires that he should have been able to foresee the injury in the precise form in which it in fact resulted, or to anticipate the particular consequence which actually flowed from his act or omission of duty." 22 R. C. L. p. 125, §12.

In *Davis* v. *Mercer Lumber Co.* (1903), 164 Ind. 413, 73 N. E. 899, our Supreme Court, in its discussion of the rule of law mentioned in the preceding paragraph, said: "It is not essential that the identical or precise injury sustained by appellant should have been expected or anticipated by appellee as the result of its negligent act. It, by the exercise of reasonable care, might have foreseen or anticipated that from the

negligent breach of its statutory duty, it was probable that injury of some kind might result to its employees engaged in operating the saw."

It is not difficult to state the rule of law in cases involving the question of proximate cause, but often its application to particular facts becomes most difficult.

It seems to us, as it evidently did to the 12 jurors and the trial judge, that, when the employees of appellant delivered to Haberstock benzol in lieu of crude oil which was ordered, benzol—a volatile, inflammable and explosive liquid instead of crude oil, a liquid not volatile or explosive under ordinary conditions —and placed the same in a container which was dirty and greasy in its exterior appearance, with a gallon of crude oil contained therein, and failed to apprise appellee or any one else using the liquid, by label, mark or otherwise, that it contained a highly explosive liquid, that appellant's employees were bound to anticipate that injury of some kind might result to the purchaser or anyone using the liquid without knowledge of its dangerousness. *Waters-Pierce Oil Co.* v. *Deselms, supra; Weiser* v. *Holzman, supra; Spencer* v. *Bolt, supra; Kentucky Independent Oil Co.* v. *Schnitzler* (1925), 208 Ky. 507, 271 S. W. 570, 39 A. L. R. 979.

Appellant says the explosion concededly was caused by some intervening agency; and that the intervening agency would not reasonably have been expected to occur in a manner likely to produce injury in connection with the original wrongful act. This court, in *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822, by Justice Lairy, said: "The question as to whether the intervention of an independent agency might reasonably have been expected to occur in such a manner as to be likely to produce injury in connection with the original wrongful act is important for the pur-

pose of determining whether the intervention of such agency breaks the chain of causation and becomes the sole proximate cause; but once this question is determined and it is held that the chain of causation is not broken by the intervention of such agency, then it becomes wholly immaterial whether the particular injury which occurred could reasonably have been expected to occur to the particular person and in the particular manner in which it did occur, provided of course, that it was the direct and natural result. . . . If the negligence is such as to render it probable that some injury will result to some person, the law imposes liability for all the injurious consequences which directly flow therefrom, whatever they are and regardless of whether they might reasonably have been foreseen or not, unless the causation is broken by the intervention of some independent agency. . . . As shown by the cases heretofore cited on this proposition, the rule seems to be well established that the intervention of an independent agency does not break the causation in cases where the intervention of such agency ought to have been expected to occur according to ordinary experience; and that, in such cases the original wrongdoer is liable for all injuries which follow as a direct result of the original negligence acting in combination with such intervening agency, even though the resulting injury could not have been produced by the original negligence alone."

In the instant case appellant's employees knew, or should have known, that the purchaser intended to use the liquid delivered to him; its employees knew or should have known that, when it made the mistake and concealed the same, in the manner as shown by the evidence, it was likely that a person unaware of the dangerous contents of the container would, in the use of the same, bring its highly explosive fumes near a

spark or flame, which would precipitate an explosion. The employees of appellant knew, or should have known, that in the ordinary and common use of crude oil, no danger of an explosion would likely follow therefrom, even though it be used near a spark, candle or jet flame, for, as shown by the evidence, the greater the contents of crude oil in a mixture of crude oil and benzol "the less likelihood of an explosion." The intervening cause was not of itself sufficient to stand as the cause of the misfortune. As was said in *Waters-Pierce Oil Co.* v. *Deselms, supra,* which is applicable here: "In view of the tendencies of the proof as to the entire absence of knowledge by Powers & Deselms, when purchasing from the oil company, and the ignorance of Deselms when he bought from the firm, of the character of the fluid, it is certain that in the case before us the act of the oil company, in any view, was the proximate cause of the accident, as no other independent and efficient cause or wrong can be legally said to have occasioned the same."

Although a spark or flame would cause benzol to explode, the evidence discloses that appellee did not in any manner negligently cause the intervening agency to act on the fumes emitted from the benzol and thus cause the explosion. Appellant supplied the benzol; it made possible by its act the very injury and damage which followed. The intervening agency was not an efficient cause for the reason that it, of itself, could not have produced the injury, and that is the test in determining when an act is or is not an efficient intervening cause.

Appellant concedes that "a spark set off this explosion." He contends, however, that the appellee was smoking cigarettes and threw a lighted one into the fire box which precipitated an explosion. There is no evidence upon which to base the surmise of appellant, for

the appellee testified that he was not smoking prior to or at the time of spraying the material into the boiler and did not light any matches. The evidence further shows that there was no fire in the basement near or in the boiler or the fire box at the time of the explosion.

It is appellee's theory that the intervening agency which caused the explosion was an electric spark produced at the time the electric cord with a burning incandescent light attached thereto and surrounded by a metal guard, was withdrawn from the fire box immediately after appellee had detected the peculiar odor arising from the liquid sprayed therein. This was the only probable cause shown by the evidence. It was a reasonable inference that the benzol fumes were ignited by a spark and the jury was warranted in finding the explosion due to this cause. In the case of *Standard Oil Co. of N. Y.* v. *R. L. Pitcher Co.* (1923), 289 Fed. 678, the court said: "It was not necessary that the plaintiffs show that a static spark was actually produced; but it was sufficient if conditions and circumstances were shown from which the inference could be reasonably drawn that a static spark was produced. It was in evidence that gasoline gives off a vapor at all temperatures above four degrees above zero, and that its volatility increases with the temperature and that the day of the accident was a very hot one.

"Circumstances and conditions have been shown which, if the testimony in regard to them were believed by the jury, would furnish ground for a reasonable inference that the gasoline vapor was ignited by an electrical spark generated as claimed by the plaintiffs, it cannot be said that the jury were forced to base their conclusions upon inferences drawn from other inferences, instead of proven facts.

"It was suggested that the vapor or gasoline might

have been ignited in some other way, and as a suggestion of what might have possibly been the cause of its ignition defendant proved that the storage tank was situated within a few rods of the railroad yards of Bangor & Aroostook Railroad, but there was no proof that any engines were being operated in this part of the .yard at the time of the fire. There was also testimony that the occupant of a house nearby had just started a fire with light' burning materials, and, gasoline vapor being heavier than air and sinking to the ground, it was suggested that it might have been started from a spark from the chimney of this house and a backfire caused, which extended to the gasoline vapor in the tank. The conclusive answer to these suggestions, however, was that the man in charge of the automobile truck, who was upon it, testified that his attention was first attracted by an explosion within the tank, and that the first fire he saw was that bursting from the manhole. The jury must have found that all other means of causing the fire, except an electrical spark, had been eliminated, and we cannot say, as a matter of law, that such a finding was clearly wrong." The Supreme Court of Nebraska, in the case of *Bacon* v. *A. B. A. Independent Oil, etc., Co.* (1924), 111 Nebr. 830, 198 N. W. 143, 33 A. L. R. 769, said: "Defendant argues that there is no evidence to show that the gasoline was ignited by the flame from the motorcycle lamp and that the jury were left to conjecture as to the cause of the gasoline becoming ignited. The evidence does not disclose the exact distance that the presto lamp was from the intake . . . but there is sufficient evidence to indicate that it could not have been more than two feet. No other cause for, or source of, ignition than the presto lamp was shown to exist. When a cause is shown which might produce an accident in a certain way, and an accident happens in

54

that manner, it is a warrantable presumption, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result."

We are reminded that 12 men by their verdict found that the negligent acts of the appellant were the proximate cause of the injury, and we cannot say as a matter of law that the finding was erroneous. *Farrell* v. *G. O. Miller Co.* (1920), 147 Minn. 52, 179 N. W. 566; *Atchison, etc., R. Co.* v. *Parry* (1903), 67 Kans. 515, 73 Pac. 105.

We find no reversible error in the giving or the refusal to give the several instructions complained of or the several items of evidence admitted in evidence over objection of appellant.

Judgment affirmed.