**Arthur E. JARRELL, Juliann Jarrell, Appellants (Plaintiffs Below),**

v.

**MONSANTO COMPANY, Appellee (Defendant Below).**

**No. 29A02–8610–CV–00354.**

Court of Appeals of Indiana, Second District.

Oct. 7, 1988.
Rehearing Denied Nov. 4, 1988.

John Richard Walsh, II, Anderson, for appellants.

Phillip R. Scaletta, Anthony P. Gillman, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

SULLIVAN, Judge.

Arthur Jarrell and his wife, Juliann, appeal the summary judgment granted to Monsanto Company in a products liability suit instituted to recover for injuries Arthur suffered in an industrial mishap.

We reverse.

Arthur is an employee of Firestone Industrial Products in Noblesville, Indiana. On October 19, 1981, he was working in the Compound Department, filling bins with pigments used in the process of manufac-

turing rubber products. The pigment bins constituted a relatively new storage system at the Noblesville plant, and the day of the accident was only Arthur's third working with them. After Arthur poured two fifty-pound bags of sulphur through the upper hatch of a bin which extended from the second floor upward above the third floor, he slid the door closed and heard it bump as it went back into place. The next thing Arthur knew, the door had blown back up and his shirt and gloves were aflame with molten sulphur. No specific cause for the explosion was established, but the sulphur product in question is easily ignited when dispersed in the air. Arthur and his wife brought this action to recover damages for Arthur's injuries against Monsanto (the supplier of the sulphur) and sundry other parties.

After extensive discovery and pretrial proceedings, only Monsanto remained as a party, defending against claims of negligent failure to warn and of strict liability for selling an inherently dangerous product. Monsanto denied the allegations, asserted several defenses and then moved for summary judgment. The Jarrells opposed the motion and filed an affidavit by Arthur with a supplement and an affidavit of Dr. Melvin H. Rudov, a forensic psychologist who stated that the sulphur product was defective for failure to provide appropriate warnings. Absent its introductory and decretal portions, the following is the order issued by the court granting Monsanto's motion and denying relief to the Jarrells:

"1. Plaintiff Arthur Jarrell, while in the course of his employment, emptied two fifty pound bags of 'Insoluble Sulphur 60' into storage bins located in the plant of his employer, Firestone, on October 19, 1981.

2. The storage bins were one-story high, with an opening on the third floor and the bottom on the second floor (with another opening) of the Firestone Plant.

3. Upon emptying the second bag, the sulphur ignited and the Plaintiff, Arthur Jarrell, was extensively burned.

4. The sulphur was sold to Firestone by Defendant Monsanto.

5. Defendant Monsanto placed warnings on the bags of its sulphur, including the following: 'WARNING!,' and 'SULPHUR DUST SUSPENDED IN AIR IGNITES EASILY!' and 'Avoid creating dust in handling.'

6. Defendant Monsanto mailed 'material safety data' to Firestone, Plaintiff Jarrell's employer, approximately ten months before this accident, such data containing the same and additional warnings.

7. Plaintiff Jarrell did not read the warning label on the bags prior to use of the sulphur.

8. Plaintiff Jarrell was aware of warning labels on the bags of various products used by him in the scope of his employment.

9. Firestone had a standard operating procedure in filling the storage bin in question, namely filling same from the bottom before filling from the top.

10. Plaintiff Jarrell violated his employer's standard operating procedure in filling the bin.

11. The sulphur itself was not defective.

12. The action of Plaintiff Juliann Jarrell against Defendant Monsanto is the result of Plaintiff Arthur Jarrell's injuries.

Thus, the buyer of the product was warned, the user of the product was warned, the user failed to heed the warnings, and misused the product. Plaintiff's statement, or an expert opinion, that if the warning had been configured differently or that a different design had been used, the Plaintiff *would* have seen and *would* have heeded same, is speculation." Record at 549–50 (emphasis in original).

The Jarrells appeal this ruling, asserting that the trial court erred by granting Monsanto's Motion for Summary Judgment.

A motion for summary judgment is governed by Ind. Rules of Procedure, Trial Rule 56, which states that our focus upon review is to examine the appropriate materials before us to determine if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. 56(C). The movant bears the burden of showing that there are no genuine issues of material fact while, throughout the process, the nonmovant is given the benefit of reasonable doubt as to their existence. *Wingett v. Teledyne Industries, Inc.* (1985) Ind., 479 N.E.2d 51. A factual issue is material if it is decisive to the action or to a relevant secondary issue and is genuine if the trier of fact must resolve the opposing parties' differing versions of the underlying facts. *Thiele v. Faygo Beverage, Inc.* (1986) 4th Dist.Ind.App., 489 N.E.2d 562, *trans. denied.* As stated in *Johnson v. Wabash County* (1979) 4th Dist., 181 Ind.App. 281, 288, 391 N.E.2d 1139, 1144: "The judge may not use summary judgment procedure to weigh the evidence to determine where the preponderance lies in advance of its being presented." In the case before us, it is apparent that the trial court weighed disputed evidence pertinent to material issues and thus erred when it granted summary judgment.[1]

The Jarrells' claim for negligence rests upon Monsanto's failure to warn Arthur of the dangers inherent in the bulk sulphur. In order to succeed upon this claim, the Jarrells must establish each of the following elements:

1) That Monsanto supplied to Firestone, for use by Arthur, a product with a concealed danger;

2) That Monsanto knew or had reason to know of the danger;

3) That Monsanto failed to adequately warn Arthur of that danger; and

---

1. We appreciate the dilemma in which trial courts are placed. Findings of fact are generally not appropriate insofar as they tend to encourage resolution of *disputed* facts in order that such findings may be made. *See Bond v. Peabody Coal Co.* (1983) 4th Dist. Ind.App., 450 N.E.2d 542. However, such findings can be helpful in understanding the trial court's rationale in reaching its decision, *Bond, supra,* and, in this case, the rationale discloses a faulty application of T.R. 56 procedures by reason of the trial court's improper weighing of the evidence.

4) That failure to warn was a proximate cause of Arthur's injury.

*See American Optical Co. v. Weidenhamer* (1983) Ind., 457 N.E.2d 181; *Ortho Pharmaceutical Corp. v. Chapman* (1979) 1st Dist., 180 Ind.App. 33, 388 N.E.2d 541, *trans. denied.* In its motion for summary judgment, Monsanto's task was to show the uncontroverted nonexistence of at least one of these elements. Monsanto failed in this task.

It is undisputed that Monsanto supplied Firestone with the bags of sulphur and that the sulphur was dangerous. The first issue is therefore reduced to whether the danger was concealed. There was evidence that Arthur had worked with this product before and recognized that there was a certain danger in handling the material, particularly that it was combustible. He had also experienced small shocks when the metal scoops used with the product created static electricity. However, such past experience would not necessarily alert a user to all dangers associated with a product. *See Butler v. PPG Industries, Inc.* (1985) 201 N.J.Super. 558, 493 A.2d 619; *Fiorentino v. A.E. Staley Manufacturing Co.* (1981) 11 Mass.App. 428, 416 N.E.2d 998. Arthur stated that at no time was he aware of the "possibility of spontaneous combustion." Record at 509. The evidence does not give rise to any permissible inference as to the cause *in fact* of the explosion. However, Arthur on two occasions claimed that "the sulphur was ignited by a spark created by the closing of the sheet metal sliding door of the bin ..." (Record at 3 and 149), although he later stated that he thought it was caused by "auto ignition" because there was no known source of ignition.[2] The facts present permissible contrary inferences not amenable to summary judgment. *See Bridgewater v. Economy Engineering Co.* (1985) Ind., 486 N.E.2d 484. A reasonable trier of fact might find either way with respect to whether Arthur should have perceived the danger which caused his injury or whether as to him, the danger was con-

cealed. *See Outboard Marine Corp. v. Schupbach* (1977) 93 Nev. 158, 561 P.2d 450. Therefore, summary judgment is not appropriate upon this issue.

As to the second element, there is no dispute that Monsanto knew of the dangers of dust explosions by outside spark and by auto ignition. Combining the first two elements, it is clear that the Jarrells presented sufficient evidence to create a question of fact as to whether Monsanto had a duty to warn of danger. *See Sills v. Massey–Ferguson, Inc.* (1969) N.D.Ind., 296 F.Supp. 776 (applying Indiana law).

The third element is whether Monsanto fulfilled its duty, if such duty existed, by adequately warning Arthur of the danger. Implied in this question is whether Monsanto's duty to warn extended to Arthur. Indiana negligence law clearly states that a manufacturer or supplier has a duty to warn all who may reasonably be foreseen as coming in contact with the product. *Dudley Sports Co. v. Schmitt* (1972) 2d Dist., 151 Ind.App. 217, 279 N.E.2d 266, *trans. denied. See also* Restatement (Second) of Torts § 388 comment n (1965). Without question Arthur was a person who could be foreseen as coming in contact with the product. Thus, all that remains of this element is whether the warning given was adequate.

The adequacy of warnings is classically a question of fact reserved to the trier of fact and, therefore, usually an inappropriate matter for summary judgment. *Sills v. Massey–Ferguson, Inc., supra,* 296 F.Supp. 776. As set forth in *American Cyanamid Co. v. Roy* (1984) Fla.App., 466 So.2d 1079, 1082, *modified on other grounds* (1986) Fla., 498 So.2d 859: "[T]he product label must make apparent the potential harmful consequences. The warning should be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger." We must therefore consider the adequacy of the factual content, the adequacy of the manner in which that content is expressed, and the adequacy of

---

**2.** It would appear that the parties use the terms "spontaneous combustion" and "auto ignition" to describe an explosion not caused by a spark or other extraneous agent.

the method of conveying these expressed facts. *Ortho Pharmaceutical Corp. v. Chapman, supra,* 388 N.E.2d 541.

■ In this case, Arthur admitted that warning labels appeared on the bags of sulphur but claims that he did not see any such warnings and did not read the labels. However, we cannot say as a matter of law that the warnings on these labels, "WARNING!," "SULPHUR DUST SUSPENDED IN AIR IGNITES EASILY!" and "Avoid creating dust in handling!," sufficiently convey to a reasonable user the nature of the danger or the extent of the potential harm. The Jarrells' expert witness, Dr. Rudov, filed an affidavit wherein he concluded that, in his experience and within his expertise in human factors engineering, the warning labels on Monsanto's sulphur bags were not appropriate by reason of their poor location, insufficiently startling colors, lack of signal symbols, and inadequate content.[3] In particular, he stressed the lack of specificity of the warning in comparison to the nature of the harm. Monsanto claims that Arthur's dumping of two sulphur bags from a height of ten feet "created a situation wherein a disaster was bound to occur." Appellee's Brief at 26. If Monsanto knew that such reasonably foreseeable dumping would cause an explosion, the trier of fact could reasonably determine that the warnings should have been more specific than merely warning against creating dust. This sulphur by nature was susceptible to dusting. It was by appearance a yellow-green powder. There is no evidence that an extraordinary amount of dust was in the air when Arthur dumped the bags of sulphur. Arguably, Arthur did nothing which would constitute a violation of the warnings. Arguably, his conduct was consistent with what a reasonable user might be anticipated to do. If so, it would permit a prima facie conclusion that the warnings were inadequate. Because an issue of fact exists as to the adequacy of the warnings, the trial court erred in granting summary judgment thereon.

■ The final element of the Jarrells' negligence claim is proximate cause. If Monsanto breached its duty to warn, the trier of fact must determine whether Arthur suffered injuries which were reasonably to be contemplated from the use of the product and of which Arthur was not warned. *See Ortho Pharmaceutical Corp. v. Chapman, supra,* 388 N.E.2d 541; *Fort Wayne Drug Co. v. Flemion* (1931) 93 Ind.App. 40, 175 N.E. 670. The record includes information on the hazards of dust explosions in general, dust explosions of sulphur in particular, similar explosions at Firestone, and the possibility of explosions of the Monsanto product itself. In its brief, Monsanto states that an explosion was "bound to occur" when Arthur dumped the sulphur from a height of ten feet. Although Monsanto had knowledge of this danger and could have reasonably contemplated such use, it failed to specifically warn of this danger. *Cf. Hinkle v. Niehaus Lumber Co.* (1988) Ind., 525 N.E. 2d 1243, in which defendant had no reason to anticipate the manner in which the product was to be used. In the view of two of the justices such lack of knowledge is applicable to a negligence claim. *See* concurring opinion of Givan, J., joined by Pivarnik, J. *Id.* at 1246. Thus, the Jarrells have presented a substantial issue of fact with respect to this last element, thereby rounding out their negligence cause of action in the face of Monsanto's motion for summary judgment.

Notwithstanding this conclusion, however, Monsanto asserts that it is entitled to

---

3. The use of expert witnesses on the issue of adequacy of warnings is being used more and more frequently in products liability cases. *See, e.g., Johnson v. Husky Industries, Inc.* (1976) 6th Cir., 536 F.2d 645; *American Cyanamid Co. v. Roy* (1984) Fla.App., 466 So.2d 1079; *Freund v. Cellofilm Properties, Inc.* (1981) 87 N.J. 229, 432 A.2d 925; *Smith v. United States Gypsum Co.* (1980) Okla., 612 P.2d 251. *But see Shell Oil Co. v. Gutierrez* (1978), Ariz.App., 119 Ariz. 426, 581 P.2d 271. Utilizing knowledge of engineering principles, industrial and human psychology, and the components of the product involved makes these experts a significant source of information upon the use of the product and the appropriateness of the warnings in comparison to that use. We fail to see that, as concluded by the trial court, this information is so speculative as to be unworthy of consideration.

judgment as a matter of law on certain affirmative defenses—contributory negligence[4] and intervening negligence. Our review of the facts discloses that Monsanto did not establish these defenses.

■ Monsanto alleges Arthur's contributory negligence in failing to read the warning labels on the bags. However, if the labels' warnings are inadequate and the labels fail to capture the user's attention, failure to read them does not bar a claim as a matter of law. *Rhodes v. Interstate Battery System of America, Inc.* (1984) 11th Cir., 722 F.2d 1517; *Bean v. Ross Manufacturing Co.* (1961) Mo., 344 S.W.2d 18. In the present case, an issue of fact does exist as to the labels' attention-getting capability. Monsanto contends that Arthur should have, as a matter of course, blown the dust off the bags to search for the labels. Such contention, however, might well suggest that the warnings were inadequate in light of the environment. *See American Cyanamid Co. v. Roy, supra,* 466 So.2d 1079, 1082 ("the sign was constantly obscured by the coat of acrylamide dust that always covered the equipment"). Manufacturers are oftentimes required to reasonably consider the environment in which the product will be used. *Gardner v. Q.H.S., Inc.* (1971) 4th Cir., 448 F.2d 238; *Spruill v. Boyle–Midway, Inc.* (1962) 4th Cir., 308 F.2d 79. The trial court's findings which imply that Arthur was contributorily negligent as a matter of law are erroneous.

Monsanto also argues that Arthur was contributorily negligent when he dumped the bags of sulphur from a ten foot height, allegedly violating the warnings which cautioned against creating dust. This alleged negligence is not to be considered unrelated to the warnings. Therefore, if the labels are adjudged inadequate, the issue is of no moment. Arthur could not be negligent in this respect unless he should have known that such conduct posed a danger. Such awareness logically could come only from warnings. Monsanto may not shift the risk of harm caused until it establishes that there were adequate warnings. *See*

*Spruill v. Boyle–Midway, Inc., supra,* 308 F.2d 79. In addition, there is evidence that Arthur used the product in accordance with the alleged warnings—he noticed no accumulation of dust suspended in the air beyond the ordinary when he emptied the bags of sulphur into the bin. It is arguable that Arthur's actions comported with the product's instructions as a reasonable man would have understood them, and therefore have created a genuine issue as to the adequacy of the warnings.

■ Monsanto also argues that Arthur was negligent in failing to follow standard plant procedures which would have prevented the accident. There is no evidence that Arthur was even aware of these procedures. Without discussing Firestone's role, suffice it to say that if Monsanto, by this argument, intimates that it can delegate its duty to warn by shifting the risk of harm to a third party's safety procedures, it is mistaken. Its duty to warn is nondelegable. *Hoffman v. E.W. Bliss Co.* (1983) Ind., 448 N.E.2d 277. The record therefore prevents Monsanto from claiming contributory negligence as a matter of law. Again, the trial court's findings and conclusions to that effect are incorrect.

Monsanto's other defense relies upon allegations that Firestone's own negligent actions intervened to cut off Monsanto's liability. Monsanto declares that, inasmuch as it informed Firestone of the danger through its circular of safety data, its duty ended and Firestone had to inform Arthur of those dangers. We disagree. The Restatement (Second) of Torts § 388 comment n (1965) lists several factors important to this determination. Drawing upon this comment, the court in *Dougherty v. Hooker Chemical Corp.* (1976) 3d Cir., 540 F.2d 174, 179, balanced "the dangerous nature of the product, the form in which the product is used, the intensity and form of the warnings given, the burdens to be imposed by requiring warnings, and the likelihood that the particular warning will be adequately communicated to those who will foreseeably use the product." We

---

**4.** This summary judgment was entered before I.C. 34–4–33–1 to 34–4–33–14 (Burns Code Ed. Repl.1986), our comparative fault statute, became effective.

have already determined that the sulphur in this case was a dangerous product and that the warnings on the bags of this sulphur may have been inadequate. As in *Hoffman v. E.W. Bliss Co., supra,* 448 N.E.2d 277, we hold that the duty to warn is nondelegable. The present case is distinguishable from *Shanks v. A.F.E. Industries, Inc.* (1981) 275 Ind. 241, 416 N.E.2d 833, wherein our Supreme Court determined that the manufacturer of an automatic grain dryer which could be incorporated into a variety of grain handling systems had no way of knowing how the dryer would be employed and, therefore, held that the employer had the duty to warn its employees. Our case involves no complex machinery—only bags of sulphur which Monsanto knew would have to be opened and dumped to be used.

Furthermore, there is a reasonable dispute as to whether the information provided to Firestone was an adequate warning. For example, there was evidence that Firestone's storage bins were designed to keep dust out, that the bins had an extensive dust collecting and ventilation apparatus, and the evidence permitted an inference that the system was working at the time of the accident. In addition, the bins were grounded. A trier of fact could find that these actions accommodated Monsanto's warnings to Firestone but could not accommodate the danger at issue because the warnings were still inadequate to the risk which Arthur faced.

Alternatively, a trier of fact might find Firestone's actions not to be an intervening proximate cause, but a concurring proximate cause of Arthur's injuries. If Monsanto's direct warning to Arthur was inadequate and if Firestone's failure to follow arguably adequate instructions was foreseeable negligence, then both may have combined to cause Arthur's injuries. *See Gardner v. Q.H.S., Inc., supra,* 448 F.2d 238; *Spruill v. Boyle–Midway, Inc., supra,* 308 F.2d 79. Again, the evidence is

sufficient to create a dispute as to these material issues. The matter is therefore more appropriate for the trier of fact than for summary judgment. *See, e.g., Spruill v. Boyle–Midway, Inc., supra.* We conclude that the trial court erred when it granted Monsanto summary judgment upon the Jarrells' negligence claim. Similar considerations militate the same conclusion on their strict liability claim.

■ Product liability actions in Indiana based upon the tort theory of strict liability are governed by I.C. 33–1–1.5–1 to 33–1–1.-5–8 (Burns Code Ed.Supp.1988)[5] which is based largely upon § 402A of the Restatement (Second) of Torts. A product manufacturer is liable if it is within the following terms of the statute:

"(a) One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm caused by that product to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

(1) The seller is engaged in the business of selling such a product; and

(2) The product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter." I.C. 33–1–1.5–3(a).

As pertains to the specific issue here—the adequacy of the warnings on the sulphur bags—the following newly-enacted provision also governs:

"(b) A product is defective under this chapter if the seller fails to:

(1) Properly package or label the product to give reasonable warnings of danger about the product; or

---

5. The Jarrells have relied upon the amended Products Liability Act in arguing their entitlement to relief. Monsanto has not disputed their right to do so. Therefore we apply the amended Act retroactively to the Jarrells' cause of action.

*See R.L.G. v. T.L.E.* (1983) 4th Dist.Ind.App., 454 N.E.2d 1268; *McGill v. Muddy Fork of Silver Creek Watershed Conservancy District* (1977) 1st Dist., 175 Ind.App. 48, 370 N.E.2d 365.

(2) Give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer." I.C. 33–1–1.5–2.5.

To paraphrase, it is apparent that the legislature intended to impose liability upon a supplier who puts into the stream of commerce any product without reasonable (adequate) warnings thereby leaving it in a condition unreasonably dangerous to any user, if such warnings could have been given in the exercise of reasonable diligence.

Warnings are typically expected on products that are intentionally marketed despite dangerous properties. A lack of, or inadequacy of, a warning contributes nothing to that danger. Rather, such lack or inadequacy fails to protect against use of the product in an unsafe manner. For the law to require a product which is unreasonably dangerous to also have a "defect" in the form of inadequate warnings is redundant. The statute would seem to require that the product not only be unreasonably dangerous but that it also be in a defective condition. These requirements are appropriate when considering a product which has a manufacturing or design defect. However, it adds nothing to require that a product *unreasonably* dangerous by reason of inadequate warnings also be in a "defective condition." The lack of adequate warning makes a dangerous product unreasonably dangerous. Liability attaches without proof of some additional "defective condition." In this regard, it may be noted that the current statute clearly states that a dangerous product which cannot be made safe for its reasonably expectable use, whether by warnings or otherwise, is not defective. I.C. 33–1–1.5–2.5(d).

▇▇▇▇ Although warnings cannot make a dangerous product safe, such warnings may avert liability. The absence of warnings cannot alter the basic nature of the product, but may render the product such as to be *unreasonably* dangerous.

Stated somewhat differently, the presence of warnings might be held to render a

hidden and specific danger ["defect"] open and obvious. *See Koske v. Townsend Engineering Co.* (1988) 2d Dist.Ind.App., 526 N.E.2d 985; *FMC Corp. v. Brown* (1988) 4th Dist.Ind.App., 526 N.E.2d 719.

In any event it must be acknowledged that the "duty to provide a non-defective product is non-delegable." *Reliance Insurance Co. v. AL E. & C., Ltd.,* (7th Cir.1976) 539 F.2d 1101, 1106 (quoting *Berkebile v. Brantly Helicopter Corp.* (1975) 462 Pa. 95, 337 A.2d 893, 903).

▇▇▇▇ As under the negligence claim, several elements are undisputed—that Monsanto supplied the sulphur to Firestone, that the sulphur was not substantially altered from the condition in which it was sold and that Arthur used the sulphur and was physically harmed. For strict liability to be imposed, the sulphur must also have been unreasonably dangerous with regard to its anticipated use. *Hinkle v. Niehaus Lumber Co., supra,* 525 N.E.2d 1243. Even if virtually faultless in design, material and workmanship, a product may be deemed defective where the seller fails to discharge its duty to warn or instruct with respect to potential and unknown dangers in the use of the product. In Indiana, the issue of the adequacy of warnings in a strict liability case is governed by the same concepts as in negligence. *Ortho Pharmaceutical Corp. v. Chapman, supra,* 388 N.E.2d 541. *See also* Givan, J., concurring in *Hinkle v. Niehaus Lumber Co., supra.* This is so even though the 1983 amendment to I.C. 33–1–1.5–1 deleted negligence as a theory giving rise to "product liability." One writer confirms this view by observing that in subsection (b) of I.C. 33–1–1.5–2.5, "the 'strict' has been taken out of strict liability and has been replaced by nothing more than negligence (reasonableness under like or similar circumstances)." Vargo, *Products Liability, 1983 Survey of Recent Developments in Indiana Law,* 17 Ind.L. Rev. 255, 277 (1984). Therefore, we need go no further to establish that on this record, it remains a question of fact whether Monsanto's warnings were adequate.

The next disputed issue is whether the sulphur was unreasonably dangerous. An unreasonably dangerous product is one

"dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A comment i (1965). *See also Posey v. Clark Equipment Co.* (1969) 7th Cir., 409 F.2d 560, *cert. denied*, 396 U.S. 940 [90 S.Ct. 374, 24 L.Ed.2d 242] (applying Indiana law); *Craven v. Niagara Machine & Tool Works, Inc.* (1981) 4th Dist. Ind.App., 417 N.E.2d 1165.

The requirement that the product be "unreasonably dangerous" focuses in large measure upon the reasonable contemplation and expectations of the consumer. I.C. 33–1–1.5–2. The requirement that the product be in a defective condition focuses upon the product itself. Therefore it may be seen that liability does not attach under 33–1–1.5–3(a) unless both elements are present. This determination is typically for the trier of fact. *Thiele v. Faygo Beverage, Inc., supra,* 489 N.E.2d 562. As earlier discussed, although the sulphur was a dangerous product as a matter of law, there is a disputed question of fact with regard to the *unreasonably* dangerous nature of the product. The question is thus inappropriate for summary judgment.

The final element needed to establish strict liability is proximate cause. The issue is whether Arthur's injury was a reasonably foreseeable result of using sulphur in a defective condition, i.e., without an adequate warning. *See Dias v. Daisy–Heddon* (1979) 3d Dist., 180 Ind.App. 657, 390 N.E.2d 222, *trans. denied.* As with the negligence claim, this is a question of fact. *Dias v. Daisy–Heddon, supra.* The record before the trial court here is sufficient to prevent summary disposition of the proximate cause element.

We must address Monsanto's three defenses in light of strict liability. We quickly dispense with its argument that Arthur was contributorily negligent for failing to read the label. Contributory negligence (or comparative fault as now present in the law) is not a defense to strict liability in Indiana. *Greeno v. Clark Equipment Co.* (1965) N.D.Ind., 237 F.Supp. 427; *Fruehauf Trailer Division v. Thornton* (1977) 3d Dist., 174 Ind.App. 1, 366 N.E.2d 21, *trans. denied.* Monsanto's discussion of this defense therefore has no application to the Jarrells' strict liability claim.

Next, Monsanto contends that Arthur's failure to read the warnings precludes any proximate causation derived from the inadequacy of the warnings. The rationale for this defense is that since the inadequacy of the warnings is the defect (or defective condition) making the product unreasonably dangerous, that defect (or defective condition) must contribute to the injury to be the proximate cause creating liability. *Technical Chemical Co. v. Jacobs* (1972) Tex., 480 S.W.2d 602. A failure to read a warning therefore eliminates an inadequate warning as a proximate cause. Under current Indiana law, this reasoning is inappropriate because the amended statute removed the adequacy of warnings from the realm of "defect" and made it merely descriptive of the unreasonably dangerous product: "A product is defective ... if the seller fails to ... [p]roperly package or label the product...." I.C. 33–1–1.5–2.-5(b)(1). *See* Vargo, *Products Liability, 1983 Survey of Recent Developments in Indiana Law,* 17 Ind.L.Rev. 255, 277, *supra.*

From a practical viewpoint such phrasing and interpretation nevertheless is sensible. Under other circumstances, a product with a design or manufacturing defect which creates unreasonably dangerous propensities in that product is the cause of injury. In the case of a product unreasonably dangerous by nature, it is more logical to say that the product causes the injury. An adequate warning will make the product *not* unreasonably dangerous, thereby eliminating an essential element within the definition of strict liability. Conversely, an inadequate or absent warning renders the dangerous product unreasonably dangerous. It is this aspect of the product which

leads to liability rather than any forced reasoning that the inadequate or missing warning was a defect in and of itself.

 As we have stated, the unreasonably dangerous quality of the product focuses in large measure upon the consumer. Therefore, an adequate warning placed on what would otherwise be an unreasonably dangerous product eliminates that essential requirement for recovery in strict liability. The danger of harm has been called to the attention of the consumer. He cannot now claim that the danger was not within his contemplation. Suffice it to say, we reject Monsanto's argument that Arthur's alleged failure to read the warnings constituted a superseding cause.[6]

 As for the specific defense of misuse the Indiana statute provides:

"It is a defense that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party." I.C. 33–1–1.5–4(b)(2).

Misuse is use for a purpose or in a manner not reasonably foreseeable. *Perfection Paint & Color Co. v. Konduris* (1970) 147 Ind.App. 106, 258 N.E.2d 681. Monsanto claims that Arthur's dumping the sulphur bags from a ten foot height violated the warnings given and, therefore, constituted

misuse. We disagree. Monsanto most likely knew that its bags of sulphur would be so used, i.e., dumped into storage bins. Its warnings caution against creating dust, suggesting that Monsanto foresaw that dust would be created in using the sulphur. As earlier noted, the sulphur itself was in powder form and dust-like. As to Arthur's violation of the warnings, we repeat that Monsanto must first establish the adequacy of the warnings and that Arthur violated the warnings. Even if dumping the sulphur from a height created an inordinate amount of dust dispersal into the air within the bin, such evidence would merely permit conflicting inferences with respect to misuse. A question of fact exists on this defense.

On Monsanto's last defense asserting Firestone's allegedly intervening actions, we again note that even if some act of Firestone was a contributing factor, Monsanto would nevertheless have to convince the trier of fact that Monsanto's acts were not a concurring proximate cause. *See, e.g., Ortho Pharmaceutical Corp. v. Chapman, supra,* 388 N.E.2d 541; *Butler v. PPG Industries, Inc., supra,* 493 A.2d 619. Summary judgment is incorrect in this regard also.

For the reasons set forth, we hold that the court erroneously granted summary judgment for defendant.[7] That judgment

---

6. Cases which adhere to the inadequate warning as defect reasoning also rely in part upon a Restatement comment which would create a presumption that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded...." Restatement (Second) of Torts § 402A comment j (1965). *See also Ortho Pharmaceutical Corp. v. Chapman* (1979) 1st Dist., 180 Ind.App. 33, 388 N.E.2d 541. The conclusion is that this presumption deals with causation and a plaintiff's burden to show he would have read an adequate warning. Vargo, *Products Liability in Indiana—In Search of a Standard for Strict Liability in Tort,* 10 Ind.L. Rev. 871, 883 (1977). Without dwelling upon the fact that this statement does not address the *adequacy* of a warning at all, the more appropriate application of this principle is a reminder to the manufacturer that when warnings *are* put on a product, it must be assumed they will be followed, thereby putting the onus upon the manufacturer to show that those warnings were indeed adequate. If a warning is adequate, the user will follow it and not be hurt. If a warning

is followed and the user is indeed hurt, perhaps that is prima facie evidence that the warning is inadequate. A manufacturer cannot therefore successfully argue that regardless of what warning he put on the product the warning would not be followed.

7. Resolution of this appeal has not been difficult with regard to the narrow confines of the reversal. That result is dictated by the myriad factual issues which are present and which permit conflicting but reasonable inferences.

The appeal has been extremely difficult, however, with regard to the underlying issues. It involves both a negligence claim and a strict liability claim. More importantly it involves inadequate warnings as the only "defect." The posture of the case merely emphasizes our conclusion that in cases involving deficient or absent warnings as the sole "defect" or "defective condition" we have nothing more and nothing less than a negligence action to which the defenses of contributory negligence, comparative negligence, etc. are not available.

is hereby reversed and the cause remanded for further proceedings.

GARRARD, J. concurs.

SHIELDS, P.J., concurring in result with opinion.

SHIELDS, Presiding Judge, concurring in result.

I concur in result only, because I disagree with majority's analysis of Indiana's product liability statute. I express the areas of disagreement by setting forth my own analysis of that statute.

The crux of Indiana's statute is found at IC 33–1–1.5–3 (West Supp.1988) ["§ 3"], the section that imposes liability:

(a) One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm caused by that product to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

(1) the seller is engaged in the business of selling such a product; and

(2) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter.

(b) The rule stated in subsection (a) applies although:

(1) the seller has exercised all reasonable care in the preparation, packaging, labeling, instructing for use, and sale of his product; and

(2) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

This section effectively adopts RESTATEMENT (SECOND) OF TORTS § 402A ["§ 402A"]. As such, the phrases "product in a defective condition" and "unreasonably dangerous to any user or consumer," found in both § 3 and § 402A, impose liability only for a product in a defective condition that is also unreasonably dangerous. However, unlike § 402A, the Indiana products liability statute includes definitions. Thus IC 33–1–1.5–2.5(a) (West . Supp.1988) ["2.5(a)"] defines the phrase "defective condition" as follows:

A product is in a defective condition under this chapter if, at the time it is conveyed by the seller to another party, it is in a condition:

(1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and

(2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

Because that definition includes the unreasonably dangerous aspect of § 402A and § 3, the phrase "unreasonably dangerous" as it appears in § 3 is redundant; the phrase "defective condition" by definition includes the concept of unreasonably dangerous, and I use that term accordingly.

Section 3 imposes liability upon the seller of a defective product irrespective of the fact that the "seller has exercised all reasonable care in the preparation, packaging, labeling, instructing for use, and sale of his product." Thus, so far, the Indiana statute is a true strict liability statute in that the focus is upon the condition of the product and not upon the seller's conduct. Knowledge of the unreasonable danger to foreseeable users is imputed to the seller.[1]

However, the legislature made an exception to the strict liability concept when it enacted IC 33–1–1.5–2.5(b) (West Supp. 1988) ["2.5(b)"].[2] This subsection includes

1. However, because of the state of the art defense codified at IC 33–1–1.5–4(b)(4) the knowledge chargeable to the seller can only be that of the "generally recognized state of the art at the time the product was designed, manufactured, packaged, and labeled."

2. It may well be that in adopting § 2.5(b) the legislature intended to codify a continuing duty by the seller to use reasonable care (a negligence standard) to give reasonable warnings of danger in a product discovered or discoverable after the initial sale of the product. For exam-

the failure to "properly package or label the product to give reasonable warnings of danger about the product ... when the seller, by exercising reasonable diligence, could have made such warnings ... available to the user or consumer" within the definition of the word "defective" in the phrase "defective condition". *Id.* The conditions of § 2.5(b), unlike those of § 2.5(a), are not associated with strict liability because they include reasonable warnings and reasonable diligence by the seller. Hence, the emphasis or focus of § 2.5(b) is upon the seller's conduct, not the product, just as in a negligence action. However, the change in focus from the product (in § 2.5(a)) to the seller's conduct (in § 2.5(b)) is not total—it includes only the adequacy of the warning ("reasonable warning") and the feasibility of providing it to the user or consumer ("exercising reasonable diligence"). Critically, § 2.5(b) does not incorporate the negligence concept that the seller must know or should have known of the danger to foreseeable users. Instead, the seller's imputed knowledge of the danger to foreseeable users is preserved by omission. To this extent § 2.5(b) incorporates some concepts of strict liability and some concepts of negligence liability.

Therefore, "defective condition" includes both a defect in the physical product under § 2.5(a) *and* a product that has no physical defect but instead is unaccompanied by warnings of danger when the seller, by exercising reasonable diligence, could have made such warnings available to the user or consumer.[3] Thus, a product that is defective under § 2.5(b) is in a defective condition under § 2.5(a) if the conditions of § 2.5(a)(1) and (2) are also met. Hence, "defective condition" includes design de-

fects, manufacturing defects and warning defects. I emphasize that before an inadequate warning or no warning can constitute a defective condition for which liability is imposed by § 3, the conditions of both § 2.5(a) and § 2.5(b) must be met. Under this analysis there is no conflict between § 2.5 and § 3(b)(1) because an inadequate warning, or no warning, by definition, does not constitute a defective condition until the seller's conduct is not reasonable in one of two aspects: in the adequacy of his warning or in his efforts to make the warning available to the consumer or user.

To summarize, § 2.5(a) (together with § 3) imposes strict liability upon products with design or manufacturing defects, imputing the seller's knowledge of the unreasonable danger, and excludes the reasonableness of the seller's conduct as a consideration. However, § 2.5(b) (together with § 2.5(a) and § 3) imposes liability upon products with warning defects, imputing the seller's knowledge of the unreasonable danger (as in strict liability) but evaluating the reasonableness of his warning efforts under a negligence standard. Therefore, I differ with the majority's view expressed in footnote 6 that § 2.5(b) is merely the restatement of a negligence action. Also, I cannot fully concur with the majority's discussion appearing on pages 14–17 of the slip opinion although I concur in their result.

---

ple, § 2.5(b) does not contain the limiting language, "at the time it is conveyed by the seller to another party" found in § 2.5(a). However, that intent is defeated by the language in § 2.5(b), "properly package or label," because a seller obviously cannot properly package or label after the initial sale.

**3.** Of course, a product could have both a manufacturing or design defect under § 2.5(a) and a warning defect under § 2.5(b).