Leanne O'NEAL, et al, Plaintiffs,

v.

BUMBO INTERNATIONAL TRUST
f/k/a Jonibach Management
Trust, et al, Defendants.

Civil Action No. 6:11–CV–72.

United States District Court,
S.D. Texas,
Victoria Division.

Aug. 1, 2013.

Elizabeth Mitchell Cunningham, Michael Ross Cunningham, Rose Walker, LLP, Dallas, TX, for Plaintiffs.

Tarush R. Anand, Brown Sims, P.C., Houston, TX, for Defendants.

### *MEMORANDUM AND ORDER*

GREGG COSTA, District Judge.

This is a product liability action involving the Bumbo Baby Seat, an infant seat manufactured by Defendant Bumbo International Trust. Plaintiffs Leanne and Joseph O'Neal brought this action after their daughter sustained injuries from falling out of a Bumbo Seat placed on a kitchen countertop. Bumbo now moves for summary judgment on the related grounds that it (1) adequately warned consumers not to place the seats on raised surfaces and (2) did not design the seat to be restrictive. Bumbo also argues that Plaintiffs are not entitled to punitive damages because they cannot prove that Bumbo had knowledge that its product caused injuries at the time Plaintiffs' seat was purchased. The Court concludes that such issues involve questions of fact appropriately resolved by a jury. Accordingly, Bumbo's motion is **DENIED.**

## I. BACKGROUND

The Bumbo Baby Seat is a molded foam infant seat designed, manufactured, and sold by Bumbo. When Bumbo distributed

the seat at issue in this case,[1] the product had instructions and warnings in three places. The box that the seat came in provided information about the seat and advised: *"WARNING: Do not use on a raised or uneven surface, as a car seat, in a bath or in other water. Bumbo™ is happiest on the floor."* Docket Entry No. 42–2 at 3.

- As soon as your baby can support his/her own head, Bumbo™ will help your baby sit in an upright position until your baby can sit unsupported.
- Suitable for babies between 3 and 14 months, weighing between 4 and 10 kg (8.8 and 22 lbs). Use should be determined by baby's physical development.
- Bumbo™ is a versatile baby seat that can be used on any flat surface.
- Bumbo™ is designed so that baby's own body weight gently keeps baby in position.
- Bumbo™ is soft, comfortable, lightweight and portable.
- Bumbo™ is made from easy to clean, non toxic material.

WARNING: Do not use on a raised or uneven surface, as a car seat, in a bath or in other water. Bumbo™ is happiest on the floor.
Do not use until your baby is fully able to support its head.
Depending on the physical development and age of the child, some babies will be able to move out of the Bumbo™, so never leave your child unattended.

Figure 1. Information provided on Bumbo packaging. Docket Entry No. 42–2 at 3.

Inside the box was a leaflet, similarly advising that the seat is "happiest on the floor" and warning customers "not [to] use on a high surface." *Id.* at 5, 7.

## WARNING

Do NOT use on a raised surface, as a car seat, in a bath or in other water. Bumbo™ is happiest on the floor.
Do NOT use until your baby is fully able to support it's head.
Depending on the physical development and age of the child, some babies will be able to move out of the Bumbo™, so NEVER leave your child unattended.

Figure 2. Two versions of the warnings included in leaflets inside the box for Bumbo Baby Seats sold before the 2007 recall. Docket Entry No. 42–2 at 5, 7.

Finally, the seat itself contained a warning in all-capital, six-point font stating, among other things, "never use on a raised surface" and "designed for floor level use only." Docket Entry No. 42 at 11.

---

1. The parties agree at this stage that the seat at issue was purchased at some point before 2007, when a product recall occurred at the request of the Consumer Product Safety Commission. The factual background thus describes the product as it existed before the 2007 recall. The 2007 recall involved adding a second printed warning on the seat and revising the instruction leaflet and packaging. Docket Entry No. 42–2 at 1.

Figure 3. Picture of warning on Plaintiffs' Bumbo Seat. Docket Entry No. 42 at 11.

The O'Neals received their Bumbo Seat in March 2009 as a hand-me-down gift from a friend who had received the seat secondhand from someone else. *See* Docket Entry No. 42–3 at 23:23–25:17, 44:12–45:1. The friend provided the O'Neals with the seat and the accompanying tray, but without the original packaging or informational leaflet. Thus, although Bumbo Seats were packaged with all three warnings, only the warning on the seat was readily available to the O'Neals.

The incident giving rise to this suit occurred on January 1, 2010. The O'Neals placed their daughter, G.O., in the Bumbo Seat on the kitchen countertop as they were cleaning shrimp and preparing dinner. According to Mrs. O'Neal, she and her husband were within arm's length of G.O. the entire time, but when they briefly looked away from her, they heard a pop and then heard her hit the ground. Docket Entry No. 42–3 at 51:2–52:16. G.O. was lying on her back on the floor and cried for a couple of minutes before she calmed down. At the advice of their pediatrician, the O'Neals took G.O. to the emergency room, where the doctors performed CT scans and diagnosed her with two skull fractures, as well as swelling and bruising.

The O'Neals filed their complaint on December 30, 2011, asserting strict products liability and negligence claims based on warning and design defects, and a negligent infliction of emotional distress claim.[2] The complaint also seeks punitive damages. Bumbo now seeks summary judgment on the grounds that: (a) its multiple warnings, if heeded, would have prevented the accident; (b) its seat was not designed to be restrictive or for use on raised surfaces; and (c) Plaintiffs cannot show that Bumbo had knowledge of injuries when its product was sold and thus are not entitled to punitive damages.

## II. LEGAL STANDARDS

### A. Summary Judgment

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute about a material fact is genuine "if

---

**2.** Bumbo does not move for summary judgment on this latter claim.

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston,* 246 F.3d 344, 348 (5th Cir.2001) (citation omitted).

### B. Indiana Product Liability Act

■■■ Bumbo argues in its summary judgment motion, and Plaintiffs do not contest, that this action is governed by Indiana substantive law. The Court agrees. District courts exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Mayo v. Hartford Life Ins. Co.,* 354 F.3d 400, 403 (5th Cir.2004) (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Texas courts determine the appropriate choice of law by using the "most significant relationship" test provided by sections 146 and 6 of the Restatement (Second) of Conflict of Laws. *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848 (Tex.2000); *Black v. Toys R US–Del., Inc.,* No. 4:08–cv–3315, 2010 WL 4702344, at *8 (S.D.Tex. Nov. 10, 2010) (citations omitted). "For tort cases, the Restatement instructs courts to consider the following contacts in determining which state possesses the most significant relationship:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and,

(d) the place where the relationship, if any, between the parties is centered."

*Black,* 2010 WL 4702344, at *8 (quoting Restatement (Second) of Conflicts of Law § 145 (1971)). "The applicable law will usually be the local law of the state where the injury occurred." Restatement (Second) of Conflicts of Law § 156(2) (1971).

■■■ Given that the injury occurred in Indiana and Plaintiffs reside there, the Court concludes that Indiana's substantive law applies to this case. *See Black,* 2010 WL 4702344, at *16 (ruling in Bumbo-related litigation that California had the most significant relationship to plaintiffs' claims in large part because "the injury occurred in California in the Plaintiffs' own home"). Specifically, the Indiana Product Liability Act governs the action, as it covers all cases that are: "(1) brought by user or a consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." I.C. § 34–20–1–1.

■■■ The Indiana Product Liability Act applies to actions sounding in negligence and strict liability. *Stegemoller v. ACandS, Inc.,* 767 N.E.2d 974, 975 (Ind. 2002) (citation omitted). For the O'Neals' negligence claim, they must prove: (1) Bumbo owed them a duty; (2) Bumbo breached that duty; and (3) the breach proximately caused an injury. *See Ford Motor Co. v. Rushford,* 868 N.E.2d 806, 810 (Ind.2007) (citation omitted). For the strict liability claim, they most prove that: (1) the product was defective and unreasonably dangerous; (2) the defective condition existed at the time the product left Bumbo's control; and (3) the defective condition proximately caused the injuries. *See id.* (citation omitted).

### III. Analysis

#### A. Adequacy of Warning

■■■ "Under either [a negligence or strict liability] theory a product may be defective under the Act where the manufacturer fails in its duty to warn of a

danger or instruct on the proper use of the product as to which the average consumer would not be aware." *Id.* (citing *Hoffman v. E.W. Bliss Co.,* 448 N.E.2d 277, 281 (Ind.1983)). The duty requires that the manufacturer both provide adequate instructions for safe use and provide a warning as to dangers inherent in improper use. *Id.; see also* I.C. § 34–20–2–2 ("[I]n an action based on ... an alleged failure to provide adequate warnings or instructions regarding the use of the product, the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in ... providing the warnings or instructions.").

Bumbo argues that summary judgment is warranted because its product included multiple warnings, which, if followed, would have prevented the accident. It relies on the maxim of Indiana product liability law that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Docket Entry No. 42 at 16–17 (alterations in original) (quoting *Marshall v. Clark Equip. Co.,* 680 N.E.2d 1102, 1105 (Ind.Ct.App.1997)).

■ But Bumbo's defense depends on whether its warnings were adequate. "[T]he adequacy of warnings, which implicates breach of duty, is generally a question of fact for the trier of fact to resolve...." *Rushford,* 868 N.E.2d at 810 (citation omitted); *see also Cook v. Ford Motor Co.,* 913 N.E.2d 311, 327 (Ind.Ct. App.2009) ("Whether a particular act or omission is a breach of duty is generally a question of fact for the jury, but can be a question of law when the facts are undisputed and only a single inference can be drawn from those facts." (citation omitted)); *Jarrell v. Monsanto Co.,* 528 N.E.2d

1158, 1162 (Ind.Ct.App.1988) ("The adequacy of warnings is classically a question of fact reserved to the trier of fact and therefore, usually an inappropriate matter for summary judgment." (citation omitted)).

■ The Court thus turns to evaluating whether a reasonable jury could find that Bumbo's warnings were inadequate. These warnings include not only the one on the seat, but also the ones on the box and on the leaflet inside the box, which the O'Neals never had access to, because the failure to warn inquiry examines the product the manufacturer "puts into the stream of commerce." I.C. § 34–20–2–1; *see also Jarrell,* 528 N.E.2d at 1166 ("[T]he legislature intended to impose liability upon a supplier who puts into the stream of commerce any product without reasonable (adequate) warnings thereby leaving it in a condition unreasonably dangerous to any user...."). In assessing the adequacy of product warnings, "courts must focus on various factors, such as content and comprehensibility, intensity of expression, and the characteristics of expected user groups." RESTATEMENT (THIRD) OF TORTS— PRODUCTS LIABILITY § 2 cmt. i (1998). The considerations include "the adequacy of the factual content, the adequacy of the manner in which that content is expressed, and the adequacy of the method of conveying these expressed facts." *Jarrell,* 528 N.E.2d at 1162–63.

At first blush, the Bumbo Seat's warnings appear satisfactory; they include three separate warnings, which, in some form, advise customers not to use the product on a raised surface, as the O'Neals did by placing their daughter in the seat on the kitchen countertop. But a closer examination of the warnings reveals that a reasonable jury could consider the warnings inadequate.

With respect to the warnings on the box and in the leaflet, a fact issue remains as to the adequacy of the content. Though the warning on the box states "Do not use on a raised or uneven surface" and the warning in the leaflet states "Do NOT use on a raised surface," *see supra* Figs. 1 & 2, the warnings also contain more permissive language, which makes them potentially ambiguous. For instance, both warnings state that "Bumbo™ is happiest on the floor," *id.*, suggesting that the product may still be somewhat happy, just less so, on other surfaces. Moreover, both the box label and the leaflet state that "Bumbo™ is a versatile baby seat that can be used on *any* flat surface," *id.*; Docket Entry No. 42–2 at 5, 7 (emphasis added), which a reasonable person could interpret to include a kitchen countertop. Such ambiguity could also be heightened by the picture on the product's box depicting three infants sitting in Bumbo Seats on top of a table at a birthday party with no adults in sight. *See* Docket Entry Nos. 1 ¶ 8; 53–2 at 5; *see also* Lewis Bass, *Product Liability: Design and Manufacturing Defects* § 4:9 (2d ed.2012) ("Inconsistent representations or assurance of safety may operate to dilute, weaken, and counteract the warning. Indeed, an assurance of safety interwoven into the warning may give rise to unreasonable risk as readily as a failure to warn.").

The Indiana appellate court's opinion in *Cook v. Ford Motor Co.*, 913 N.E.2d 311 (Ind.Ct.App.2009), is instructive. That opinion considered whether Ford adequately warned its customers of the dangers that its airbags posed to children sitting in the front passenger seat. *Id.* at 326–31. The vehicle's owner manual advised that children should be placed in the rear seat and that "children are safer when properly restrained in rear seating positions than when they are restrained in front seating positions"; however, it also stated, conflictingly, that the airbag should be on "unless there is a rear-facing infant seat installed in the front seat." *Id.* at 326 (citations and internal quotation marks omitted). Given that ambiguity, the court determined that even if the plaintiffs read and heeded all the instructions, a question of fact remained as to whether a reasonable person would have understood from the instructions that injury could occur under the circumstances. *Id.* at 327. Moreover, the court determined that a jury could find that additional warnings instructing drivers to place children in the backseat "if possible" and instructing that passengers "should" wear their seatbelts to be inadequate because of the "permissive nature of the warnings." *Id.* at 327–28. Like in *Cook*, the Bumbo Seat's warnings could be considered ambiguous or permissive, and thus a reasonable jury could find them inadequate.

■ The warnings on the box and in the leaflet, if considered alone, could also be deemed inadequate based on their form. Plaintiffs present evidence demonstrating that Bumbo foresaw that (a) many customers throw away the box and other materials after purchasing the product; and (b) a substantial secondhand market exists for the product in which customers would not receive the full package. *See* Docket Entry No. 53 at 8–10. For instance, Bumbo's corporate representative stated that the warning on the seat is the most important warning because "that's all that's left after you purchase it" since the box and leaflet are presumably thrown away. Docket Entry No. 53–1 at 129. And he admitted to knowing that the product is sold secondhand on websites such as eBay and Craigslist and "it does not come with a box" and "no leaflet" and "it's going to be used by people who don't have the proper warnings." *Id.* at 132. While, as mentioned above, it is generally true that warnings are evaluated based on how the

product enters the stream of commerce, Bumbo's ability to foresee the secondhand usage of its product means that it may have had a duty to provide warnings that would still be useful for the secondary market. Indeed, "Indiana negligence law clearly states that a manufacturer or supplier has a duty to warn all who may reasonably be foreseen as coming in contact with the product." *Jarrell,* 528 N.E.2d at 1162 (citing *Dudley Sports Co. v. Schmitt,* 151 Ind.App. 217, 279 N.E.2d 266 (1972)); *see also* RESTATEMENT (SECOND) OF TORTS § 388 ("One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel....."); I.C. § 34–20–2–1 (stating that seller is liable for physical harm caused by its product if the "consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm").

The Court thus turns to whether the printed warning on the seat itself was adequate. The seat warning did not have the potential inadequacies of the ones mentioned for the box and leaflet warnings. In terms of content, the language on the seat warning was not permissive or ambiguous, as it omitted statements about being able to use the seat "on any flat surface" or the seat being "happiest on the floor," and instead stated "NEVER USE ON A RAISED SURFACE" and "DESIGNED FOR FLOOR LEVEL USE ONLY." It is tough to come up with a more unequivocal warning than that. And because the warning was on the seat, consumers could not throw it away or fail to provide it to secondhand users.

Nonetheless, a jury could find other potential inadequacies about the form of the on-seat warning. "As to form, a warning may be inadequate if (1) its physical characteristics, including its size and placement, are so small or obscure that the

reasonable consumer would not read it; or (2) it fails to inform the reasonable consumer of the pertinent hazard and the means for its avoidance." David G. Owen, M. Stuart Madden & Mary J. Davis, *Madden & Owen on Products Liability* § 9:10 (3d ed.2013). The first potential inadequacy is the warning's size; it is in six-point font, which makes it difficult for consumers to notice or read. *See* Docket Entry No. 53–3 at 90. While the warning is readable when Defendants enlarge it for the summary judgment motion, an actual display of the print in six-point font (written out below) looks much different:

WARNING

NEVER USE ON A RAISED SURFACE NEVER USE AS A CAR SEAT OR BATH SEAT DESIGNED FOR FLOOR LEVEL USE ONLY NEVER LEAVE YOUR BABY UNATTENDED AS THE SEAT IS NOT DESIGNED TO BE TOTALLY RESTRICTIVE AND MAY NOT PREVENT RELEASE OF YOUR BABY IN THE EVENT OF VIGOROUS MOVEMENT

Docket Entry No. 42–2 at 2. Such small print can make the warning inconspicuous and subject to a factual determination of inadequacy. "Numerous decisions confirm that the physical characteristics of the warning itself are pertinent to the evaluation of its adequacy. The warning's conspicuousness, prominence, and size of print, in comparison to the print size employed for other parts of the manufacturer's message, must be adequate to alert the reasonably prudent person." Madden, Owen & Davis, *Madden & Owen on Products Liability* § 9:10 (citation and internal quotation marks omitted); *see also* Lewis, *Product Liability: Design and Manufacturing Defects* § 4:9 (noting that warnings should be "eye arresting" and "may be inadequate because they are not conspicuous enough"). Plaintiffs list other poten-

tial inadequacies identified by their expert, regarding such things as the fadeability of the print, the contrast between the color of the print and the seat, the all-capital lettering, and the order in which the warnings are given. While some of these theories seem more plausible than others, a fact question remains for the jury to resolve about the adequacy of the on-seat warning. Accordingly, summary judgment is not appropriate.[3]

### B. Improper Use

With respect to the design defect claim, Bumbo argues that "a product is not defective for failing to do that which it was not designed to do," and the Bumbo Seat was not designed to be restrictive or for use on raised surfaces. Docket Entry No. 42 at 18 (quoting *Anderson v. P.A. Radocy & Sons, Inc.*, 865 F.Supp. 522, 531 (N.D.Ind. 1994)). Bumbo relies on an affidavit from its CEO and the product's warnings discussed above as evidence that the Bumbo Seat was not designed to be used how the O'Neals used it. The O'Neals, on the other hand, argue that the defense boils down to one of "misuse," which is a basis for allocating responsibility but not dismissal.

■■■ The Court finds that existing issues of fact regarding not only the intended design, but also the reasonably ex-

pected use of the Bumbo Seat, preclude summary judgment. The O'Neals present sufficient evidence to create a fact issue concerning whether the Bumbo Seat was designed for the limited use that Bumbo advocates. That evidence includes:

- images from Bumbo's website in which children are in Bumbo Seats on elevated surfaces and/or without adults nearby, Docket Entry No. 53–1 at 57–59;

- an image from the product's box in which children are in Bumbo Seats on a tabletop without adults nearby, Docket Entry No. 1 ¶ 8;

- a tagline on the box advertising the product as "Your extra set of hands," Docket Entry No. 53–3 at 2; and

- statements on the box and in the instructional leaflet representing that the seat could be used "on any flat surface" and that the "baby's own body weight gently keeps baby in position," *see supra* Figs. 1 & 2.

■■■ Moreover, the defense appears to boil down to one of misuse, even though the term is not used in Bumbo's brief. The basis of Bumbo's argument is that the O'Neals failed to follow the warnings that the seat was not restrictive and not meant

---

3. To further support its motion, Bumbo presents deposition testimony of the O'Neals stating that they would not have placed their daughter on the countertop had they read the warnings prior to the accident. But a fact issue remains for three reasons. First, a "[p]laintiff's admissions are not determinative, but are relevant to what the average consumer knew and whether the products were unreasonably dangerous." *Anderson v. P.A. Radocy & Sons, Inc.*, 865 F.Supp. 522, 531 (N.D.Ind.1994) (citing *Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045, 1053 (Ind.Ct.App.1990)). Second, given the potential inadequacies with the form of the warnings—namely, the propensity for the box and leaflet to be thrown away and the small font size of the on-seat warning—a reasonable

consumer may, like the O'Neals, not have seen the warnings. *See Jarrell v. Monsanto Co.*, 528 N.E.2d 1158, 1164 (Ind.Ct.App.1988) ("[I]f the labels' warnings are inadequate and the labels fail to capture the user's attention, failure to read them does not bar a claim as a matter of law." (citations omitted)). Third, though defense counsel confronted the O'Neals with the warnings at the deposition, counsel did not present such exhibits in conjunction with other packaging, such as the picture on the Bumbo Seat box showing three kids sitting on the seats on a tabletop. While it might be unreasonable for a consumer to use the seat on a raised surface when only directed toward the warning, that might not be the case for a consumer who sees other competing messages.

to be used on elevated surfaces. The argument follows section 34–20–6–4 of the Indiana Code, which provides a defense when the "cause of the physical harm is a misuse of the product by the claimant … not reasonably expected by the seller." I.C. § 34–20–6–4. Whether or not the seat was, in fact, designed to be a restrictive seat or used on countertops, a jury could find that Bumbo "reasonably expected" consumers to use its product in that manner and breached its consequent duty to provide adequate warnings. I.C. § 34–20–6–4; *see also Jarrell*, 528 N.E.2d at 1166 ("Even if virtually faultless in design, material and workmanship, a product may be deemed defective where the seller fails to discharge its duty to warn or instruct with respect to potential and unknown dangers in the use of the product.").[4] And, in any event, misuse is not a complete defense in Indiana, but one of comparative fault, best left to a jury to resolve. *Barnard v. Saturn Corp.*, 790 N.E.2d 1023, 1029–30 (Ind.Ct.App.2003); *Coffman v. PSI Energy*, 815 N.E.2d 522, 534 (Ind.Ct. App.2004).[5]

Accordingly, the Court finds that a genuine issue of material fact remains with respect to Plaintiffs' design defect claim.

## C. Punitive Damages

 Finally, Bumbo argues that Plaintiffs are not entitled to punitive damages because they cannot establish that their Bumbo Seat was sold after 2004—the time period when Plaintiffs allege that Bumbo learned its products were injuring children.

However, as Plaintiffs point out, their punitive damages claim is not based solely on Bumbo's failure to make its product safer after learning about the danger. The claim for punitive damages "also rests on the [allegation] that Bumbo had been callously disregarding the safety of children since it first developed, 'tested' and began marketing the Bumbo Seat for sale." Docket Entry No. 53 at 27. Moreover, fact issues remain as to exactly when the O'Neals' Bumbo Seat was manufactured and when Bumbo received notice of injuries involving its product. *See Gresser v. Dow Chem. Co.*, 989 N.E.2d 339, 349 (Ind.Ct.App.2013) ("Whether a party may recover punitive damages is usually a question of fact for the fact finder to decide; however, it may be decided as a matter of law." (citation omitted)). And Indiana courts have been "unwilling to say that, in a case involving punitive damages, post-incident acts could never be relevant to the issue of punitive damages in conjunction with the incident giving rise to the plaintiff's claim." *Id.* at 350 n. 3 (finding that defendant's post-incident failure to warn could be determined by the fact finder to be consistent with a pattern of gross negligence (citation and internal quotation marks omitted)).

The Court accordingly denies summary judgment with respect to Plaintiffs' claim for punitive damages.

---

4. Courts have also found misuse when a product is used "in direct contravention of its reasonably expected permitted use." *Barnard v. Saturn Corp.*, 790 N.E.2d 1023, 1029–31 (Ind.Ct.App.2003). Nonetheless, for many of the reasons described in Section III(A), *supra*, a fact issue remains as to whether the O'Neals' conduct constituted reasonably expected permitted use.

5. A court may grant summary judgment as a matter of law with regard to a misuse defense when it determines that a reasonable fact finder could only reach one conclusion that (a) the plaintiff's use of the product was not reasonably expectable to the seller, and (b) the defendant was less than fifty percent at fault for the injuries. *Barnard*, 790 N.E.2d at 1031 (citations omitted). However, for the reasons described above, that is not the case here.

## IV. Conclusion

For the foregoing reasons, Defendant Bumbo International Trust's Motion for Summary Judgment (Docket Entry No. 42) is **DENIED**.